NIPOCH CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 75616, 79775. Promulgated October 15, 1937.

*Samuel B. Pack, Esq.,* and *Benjamin M. Kaye, Esq.,* for the petitioner.

*DeWitt M. Evans, Esq.,* and *Spaulding F. Glass, Esq.,* for the respondent.

OPINION.

Murdock: The pertinent statutory provisions are as follows:

SEC. 104. ACCUMULATION OF SURPLUS TO EVADE SURTAXES.

(a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and

paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 13  *  *  *.

(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.

See section 104 of the Revenue Acts of 1928 and 1932. Substantially similar provisions are found in the earlier acts.[1]  See section 220 of the Revenue Acts of 1918, 1921, 1924, and 1926.

Both parties argue separately the questions (1) whether the petitioner was formed, and (2) whether it was availed of, for the purpose described in the statute. The respondent contends that the taxes in controversy are due if the corporation was either formed or availed of for the purpose mentioned. The respondent finds support for his contention in the statute, which uses the word "or." But the point need not be decided in this case.

The Commissioner has determined that section 104 applies. His determination is presumed to be correct until the contrary appears from the evidence. Thus the evidence must be examined to see whether or not it is sufficient for the petitioner's purpose. After paying no Federal income taxes for the years 1919, 1920, and 1921, Earle was required to pay $30,257.06 for the year 1922. Earle and his advisers began to make plans for the organization of the petitioner at or about the time that his return for the year 1922 was due. Three corporations were formed and to these Earle transferred practically all of his fortune. The petitioner received about 77 percent of Earle's fortune in June 1923. Most of the income from the property transferred to the petitioner was in the form of dividends not ordinarily taxable to a corporation. Thus it must have been obvious to Earle and his advisers that the result of the transfer of this property from Earle to the petitioner would be a substantial reduction in the taxes on the income from the property. Such was the result of the transfer.

Martens, who was familiar with the circumstances surrounding the formation of the petitioner, was the only one who gave direct testimony as to the purpose for which the petitioner was formed. He testified that he was familiar with Federal income tax statutes at that time but thought that the formation of the petitioner would not have any effect upon income taxes because the petitioner could follow the practice, resorted to by Earle in prior years, of selling securities at a loss in order to wipe out income. Since most of the dividends to be received by the petitioner would form no part of its taxable income under normal circumstances, it is obvious that its

---

[1] In the acts prior to that of 1924, the words "or investment" did not appear in (b).

dividend income would not have to be wiped out by losses. Furthermore, Earle had not been able to wipe out his income for 1922, and it is difficult to see how anyone could have reasonably anticipated in 1923 that the petitioner would sustain losses equal to its taxable income in subsequent years. Martens further testified that the petitioner and the other two corporations were incorporated for the purpose of simplifying the administration of Earle's estate after his death. A finding has been made that that was one of the purposes in incorporating. But such a purpose is, of course, not inconsistent with another purpose to reduce income taxes by having the corporation accumulate its gains and profits rather than distribute them to Earle.

Earle did not testify. No officer of the petitioner testified. Purpose, being a state of mind, is always difficult to determine in a proceeding like this. Subsequent events may aid. The gains and profits of the petitioner, instead of being divided or distributed, were accumulated during the years following its incorporation in amounts far beyond the reasonable needs of its business. The result was that its shareholder was saved from the imposition of a large amount of surtax over a period of years. The record considered as a whole warrants the conclusion that this corporation was formed for the purpose of preventing the imposition of the surtax upon its shareholder through the medium of permitting its gains or profits to accumulate instead of being divided or distributed.

The Commissioner has been sustained in applying section 104 and its predecessors in a number of cases. But in each of those cases there has been a finding that the corporation was "availed of" within the taxable year for the purpose described in the statute. No case has come to our attention where the Commissioner has been sustained solely on the ground of the purpose for which a corporation was "formed." However, in at least two cases there are statements to indicate that that purpose alone would be sufficient. *Saenger, Inc.* v. *Commissioner*, 84 Fed. (2d) 23, affirming 33 B. T. A. 135; *Rands, Inc.*, 34 B. T. A. 1094.

Although it is quite obvious that for a number of years following its organization the petitioner was availed of for the purpose of preventing the imposition of the surtax upon its shareholder through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, the situation in this connection for the taxable years 1931 and 1932 is somewhat peculiar. The petitioner in every year of its existence had a substantial amount of income. The dividends which it paid effected a distribution of only a small part of its income. The result was that it accumulated a substantial surplus. The reasonable needs of the business neither required nor justified the accumulation of gains or profits in the amount shown on

its books. Those books show that it had a surplus in excess of $3,500,000 during each of the years 1931 and 1932. The book surplus resulted from the fact that the petitioner carried its securities at cost. However, the market value of those securities had declined to such an extent that the actual value of its assets was substantially less than the amount of its liabilities, including the par value of its outstanding stock. The petitioner argues that under such circumstances a corporation could not possibly be availed of during the taxable year for the purpose of preventing the imposition of the surtax upon its shareholder through the medium of permitting its gains or profits to accumulate instead of being divided or distributed. The argument is that it would actually have no accumulation of gains or profits whatsoever and any distribution to its shareholders would be a distribution of capital. See *Vogtman* v. *Merchants' Mortgage & Credit Co.*, 178 Atl. 99; cf. *Federal Mining Co.* v. *Wittenberg*, 138 Atl. 347; *Loren D. Sale*, 35 B. T. A. 938; sec. 34, General Corporation Law of New Jersey, as amended in 1929. However, a similar situation existed in the case of *Rands, Inc.*, and the Board held that the corporation was availed of within the year for the purpose described in the statute.

Reviewed by the Board.

> *Decision will be entered for the respondent.*