Latchis Theatres of Keene, Inc. v. Commissioner. Latchis Theatres of Claremont, Inc. v. Commissioner.
Latchis Theatres of Keene v. Comm'r
Docket Nos. 60729, 60730. United States Tax Court
T.C. Memo 1959-247; 1959 Tax Ct. Memo LEXIS 6; 18 T.C.M. (CCH) 1171; T.C.M. (RIA) 59247; December 31, 1959, Decided George R. Hanna, Esq., and Charles H. Morin, Esq., for the petitioners. Chester M. Howe, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: In these consolidated proceedings respondent determined the following deficiencies in petitioners' income tax: Petitioner
Year Ended
Deficiency
Latchis Theatres of
Keene, Inc.
June 30, 1948
$2,076.38
June 30, 1949
1,862.33
Latchis Theatres of
Claremont, Inc.
June 30, 1948
1,737.43
June 30, 1949
1,338.51
The sole issue is whether petitioners are subject to tax under *7 section 102, I.R.C. 1939, as having been availed of during the taxable years to prevent the imposition of the surtax upon their shareholders by permitting their earnings or profits to accumulate instead of being divided or distributed. Findings of Fact The stipulated facts are found. Petitioners, Latchis Theatres of Keene, Inc., and Latchis Theatres of Claremont, Inc., hereafter called Keene and Claremont, respectively, are New Hampshire corporations organized on April 15, 1931. In 1946 they kept their books and filed their income tax returns on a calendar year basis and according to the accrual method of accounting. Petitioners' fiscal years were changed in 1947 to end on June 30. Their returns for the years in issue were filed with the collector of internal revenue for the district of New Hampshire. The capital stock of Keene consisting of 996 shares which had a book value of $5,690.61, and the capital stock of Claremont consisting of 996 shares which had a book value of $3,677.77, were each owned during the years in issue as follows: Shares
Percentage
Spero D. Latchis
227 23/35
22.857
Peter D. Latchis
227 23/35
22.857
John D. Latchis
227 23/35
22.857
Estate of Emmanuel D.
Latchis
227 23/35
22.857
Helen Andreson
28 16/35
2.857
Martha Saledas
28 16/35
2.857
Sophia Lyras
28 16/35
2.857
*8 Spero, Peter, John and Emmanuel were brothers. Emmanuel died on November 12, 1947. Helen Andreson, Martha Saledas and Sophia Lyras are sisters of the Latchis brothers. During the years in issue, Keene operated 3 motion-picture theatres and Claremont operated 1 motion-picture theatre. D. Latchis, Inc., a New Hampshire corporation, owned real estate during these years, including the properties used in petitioners' theatre operations. The stock of D. Latchis, Inc., was owned by the same persons and in the same proportions as petitioners' stock. Latchis Corporation and D. Latchis and Sons, Inc., are Vermont corporations. The former owned and managed real estate in Vermont and the latter operated 2 motionpicture theatres in Brattleboro, Vermont. The stock of Latchis Corporation was owned by the same persons and in the same proportions as petitioners' stock, as was also the stock of D. Latchis and Sons, Inc., except that Spero owned 21.857 per cent instead of 22.857 per cent, and the remaining 1 per cent was owned by Angeline S. Latchis. Metropolitan Realty Corporation owned property in Leominster, Massachusetts. The four Latchis brothers owned all of its stock in equal shares. *9 Latchis Hotel, a partnership owned equally by John and Spero Latchis, operated a hotel in Brattleboro, Vermont. Whetstone Realty Company, a partnership composed of John and Peter Latchis in equal shares, purchased and managed property in Brattleboro, Vermont. Petitioners and D. Latchis, Inc., elected identical officers, as follows, at their annual meetings held during the first week of February 1947, 1948 and 1949: 1947
1948
1949
Spero Latchis
President
President
President
Emmanuel Latchis
Vice Pres.
John Latchis
Vice Pres.
Vice Pres.
Vice Pres.
Peter Latchis
Treasurer
Treasurer
Treasurer
Sophia Latchis
Ass't Treas.
Ass't Treas. The Latchis brothers were directors of petitioners and D. Latchis, Inc., in 1947. In 1948 and 1949, the directors of petitioners and D. Latchis, Inc., were Spero, John, Peter and Philip H. Faulkner. During the years in issue, Spero, John and Peter met several times weekly to discuss the business matters of the various Latchis enterprises. There were no minutes of these discussions. During the years in issue, Spero, John and Peter received annual salaries from Keene of $3,500, $2,500 and $3,000, *10 respectively, and from Claremont of $2,500, $3,000 and $3,500, respectively. Petitioners' returns for the years in issue reflect net income after taxes as follows: June 30, 1948
June 30, 1949
Keene
$7,975.28
$6,463.89
Claremont
6,317.91
4,867.32
Petitioners' income or (loss) for the years ended June 30, 1950, 1951, 1952 and 1953 was: Year Ended
June 30
Keene
Claremont
1950
($4,082.60)
($2,679.77)
1951
( 7,125.71)
( 7,803.32)
1952
3,204.62
( 537.06)
1953
( 3,340.67)
( 3,625.12)
Petitioners had an earned surplus for the taxable years ended December 31, 1939 through June 30, 1953, as follows: Keene
Claremont
12/31/39
$12,124.71
$ 4,381.75
12/31/40
16,961.07
6,936.54
12/31/41
19,158.28
9,939.50
12/31/42
29,302.74
15,058.43
12/31/43
31,225.95
15,840.96
12/31/44
40,874.29
18,742.53
12/31/45
52,671.97
20,426.09
12/31/46
69,317.79
28,130.22
6/30/47
76,239.29
31,619.21
6/30/48
83,662.87
37,937.12
6/30/49
90,126.76
42,804.44
6/30/50
86,044.16
40,124.67
6/30/51
79,494.65
32,321.35
6/30/52
82,699.27
31,784.29
6/30/53
79,358.60
28,159.17
*11 In addition, Keene had a paid in surplus throughout the years in issue of $14,059.07. Petitioners made no dividend distribution during the years in issue or at any prior time since their incorporation in 1931. Keene made loans to shareholders and to other business organizations owned by shareholders. The resulting accounts receivable outstanding at the close of its taxable years 1941 through June 30, 1949, and the debtors were: Peter D.
John D.
Sophia D.
Latchis
Latchis
Lyras
D. Latchis,
Inc.
12/31/41
$24,975.98
$4,793.12
$ 523.93
$16,828.21
12/31/42
25,011.65
8,998.12
2,486.11
1,919.49
12/31/43
25,669.67
8,998.12
4,968.49
1,259.86
12/31/44
27,182.98
9,298.12
4,980.99
7,818.02
49,280.11
12/31/45
28,520.56
8,798.12
28,957.08
12/31/46
28,610.56
8,798.12
54,435.43
6/30/47
28,610.56
8,798.12
54,893.01
6/30/48
28,625.56
9,817.82
65,120.65
6/30/49
28,625.56
7,657.82
62,201.17
Latchis
Metropolitan
Office
Hotel
Realty Corp.
Account
Totals
12/31/41
$ 500.00
$47,621.24
12/31/42
7,162.21
45,577.58
12/31/43
6,577.34
47,473.48
12/31/44
49,280.11
12/31/45
66,275.76
12/31/46
$2,632.36
94,476.47
6/30/47
2,041.19
94,342.88
6/30/48
$1,500.00
4,148.77
109,212.80
6/30/49
1,500.00
6,865.56
106,850.11
*12 No interest was payable to Keene on the accounts receivable for the years in issue. Keene's balance sheet for the years in issue was as follows: Assets
6/30/48
6/30/49
Cash
$ 3,796.96
$ 195.00
Accounts receivable
D. Latchis, Inc.
65,120.65
62,201.17
Metropolitan Realty Corp.
1,500.00
1,500.00
Office account
4,148.77
6,865.56
Officers
38,443.38
36,283.38
Equipment
Furniture and fixtures
16,786.38
Sound equipment
1,704.50
2,446.50
Other equipment
1,216.60
1,046.01
$115,930.86
$127,324.00
Liabilities
Bank overdraft
$ 663.40
Accounts payable, trade
$ 3,904.75
12,058.43
Accounts payable, other
Latchis Metropolitan Theatre Co.
500.00
Officers
2,000.00
Admission taxes
2,405.16
1,577.18
Federal income taxes withheld
107.00
426.30
Accrued liabilities
Federal income taxes
2,252.36
1,800.90
Other taxes
349.04
421.35
Salaries
1,500.00
Total liabilities
$ 12,518.31
$ 17,447.56
Capital stock
5,690.61
5,690.61
Donated surplus
14,059.07
14,059.07
Earned surplus
83,662.87
90,126.76
$115,930.86
$127,324.00
Keene had total assets as follows: 12/31/41
12/31/42
12/31/43
12/31/44
$72,893.50
$64,647.22
$61,981.88
$74,801.95
*13 12/31/45
12/31/46
6/30/47
$82,408.06
$103,058.40
$105,715.24
Claremont made loans to shareholders and other business organizations owned by shareholders. The resulting accounts receivable outstanding at the close of its taxable years 1941 through June 30, 1949, and its debtors were: Peter D.
John D.
D. Latchis
Latchis
Latchis
Latchis
Inc.
Hotel
Keene
12/31/41
$2,015.10
$ 6,352.51
$17,207.65
12/31/42
4,275.00
$ 632.80
20,649.05
$ 1,272.69
12/31/43
4,275.00
5,604.98
15,149.05
1,907.74
12/31/44
4,275.00
34.66
19,149.05
12/31/45
3,765.71
538.01
19,649.05
12/31/46
33,649.05
6/30/47
31,649.05
2,000.00
6/30/48
28,891.06
13,500.00
6/30/49
1,000.00
31,391.06
11,000.00
Est. of Em-
Whetstone
Office
manuel D.
Realty
Latchis
Account
Latchis
Co.
Corp.
Totals
12/31/41
$25,575.26
12/31/42
27,639.54
12/31/43
27,746.77
12/31/44
$2,339.30
25,798.01
12/31/45
3,295.99
27,248.76
12/31/46
3,596.65
37,245.70
6/30/47
3,388.57
$822.10
$1,000.00
38,859.72
6/30/48
2,242.35
822.10
1,000.00
46,455.51
6/30/49
1,800.75
822.10
$3,000.00
49,013.91
*14 In addition, at the close of the taxable years 1942 and 1943, Sophia D. Lyras owed Claremont $810.00. No interest was payable to Claremont on the accounts receivable for the years in issue. Claremont's balance sheet for the years in issue was as follows: Assets
6/30/48
6/30/49
Cash
$ 2,196.13
$ 414.68
Accounts receivable
Latchis Hotel
13,500.00
11,000.00
D. Latchis, Inc.
28,891.06
31,391.06
Latchis Corporation
1,000.00
Whetstone Realty Co.
3,000.00
Office account
2,242.35
1,800.75
Estate of Emmanuel D. Latchis
822.10
822.10
Officers
1,000.00
Equipment
Sound and projector equipment
950.00
Furniture and fixtures
630.34
978.42
$49,281.98
$51,357.01
Accounts payable, trade
$ 1,796.78
$ 2,090.64
Accounts payable, other
Admission taxes
968.05
925.14
Federal income tax withheld
76.30
403.70
Accrued liabilities
Federal income taxes
1,757.29
1,324.01
Other taxes
68.67
131.31
Salaries
3,000.00
Total liabilities
$ 7,667.09
$ 4,874.80
Common stock, 996 shares, no par
3,677.77
3,677.77
Earned surplus
37,937.12
42,804.44
$49,281.98
$51,357.01
Claremont had total assets as follows: 12/31/41
12/31/42
12/31/43
12/31/44
12/31/45
12/31/46
6/30/47
$26,819.57
$29,842.46
$29,485.16
$33,502.85
$31,687.05
$39,766.19
$41,223.25
*15 The Latchis corporations had one general office in Brattleboro, Vermont, which received all bills. Petitioners' accounts receivable entitled "Office account" represent credit balances which they had with the general office. D. Latchis, Inc., made loans to the persons indicated which resulted in accounts receivable balances as follows: Peter D.
John D.
Sophia D.
Latchis
Latchis
Latchis
Latchis
Lyras
Hotel
Corp.
12/31/41
$49,681.88
$10,728.37
$186,751.29
12/31/42
65,305.80
10,237.21
194,351.54
12/31/43
58,757.39
$ 515.00
10,218.41
201,884.14
12/31/44
57,851.14
$ 852.61
10,728.37
209,416.74
12/31/45
52,306.01
1,390.85
10,728.37
209,416.74
12/31/46
38,306.01
1,390.85
17,224.20
10,728.37
203,416.74
6/30/47
34,000.00
17,224.20
10,728.37
203,416.74
6/30/48
27,280.37
3,021.55
10,728.37
214,400.18
6/30/49
41,780.37
3,021.55
15,000.00
213,400.18
D. Latchis
Est. of Em-
Metropoli-
& Sons,
Emmanuel D.
manuel D.
tan Realty
Inc.
Latchis
Latchis
Corp.
Totals
12/31/41
$1,050.00
$248,211.54
12/31/42
269,894.55
12/31/43
271,374.94
12/31/44
278,848.86
12/31/45
273,841.97
12/31/46
$ 3,765.00
$49,522.99
324,354.16
6/30/47
10,519.53
44,000.00
319,888.84
6/30/48
$6,316.89
41,850.00
303,597.36
6/30/49
6,316.89
40,350.00
319,868.99
*16 The rents paid to D. Latchis, Inc., by petitioners for the taxable years ended December 31, 1932 through June 30, 1949 were: Keene
Claremont
Latchis
Colonial
Latchis
Theatre
Theatre
Theatre
Latchis
Keene
Keene
Milford
Total
Theatre
1932
$12,000.00
$6,000
$18,000.00
$12,000
1933
12,000.00
6,000
18,000.00
12,000
1934
12,000.00
6,000
18,000.00
12,000
1935
18,000.00
6,000
24,000.00
17,000
1936
16,000.00
6,000
22,000.00
22,000
1937
16,000.00
6,000
22,000.00
22,000
1938
16,000.00
6,000
$8,000
30,000.00
22,000
1939
18,317.37
9,000
9,000
36,317.37
22,000
1940
17,981.92
6,000
8,000
31,981.92
22,000
1941
16,030.87
6,000
8,000
30,030.87
22,000
1942
18,841.65
6,000
8,000
32,841.65
22,000
1943
19,659.63
6,000
8,000
33,659.63
18,000
1944
21,211.00
6,000
8,000
35,211.00
18,000
1945
22,860.94
6,000
8,000
36,860.94
18,000
1946
25,721.65
6,000
8,000
39,721.65
18,000
6/30/47
12,542.42
3,000
4,000
19,542.42
9,000
6/30/48
25,072.36
6,000
8,000
39,072.36
18,000
6/30/49
24,069.48
6,000
8,000
38,069.48
18,000
The *17 rental of the Latchis Theatre, Keene, from 1939 through 1949 is based on 30 per cent of the admissions of that theatre. The other rents are at definite amounts as determined by the lessor and the lessee. A drive-in theatre commenced operations in Keene, New Hampshire, in the spring of 1949. On November 28, 1949, a corporation which was organized for the purpose of operating a drive-in theatre acquired land in Claremont, New Hampshire. The Boston area had television receiption in 1948. Two years later Keene, New Hampshire, received good reception. In 1949, approximately 22 television sets were sold in the Keene, New Hampshire, area. A corporation was formed in 1949 for the purpose of selling and servicing television sets. Part of the Latchis building in Keene, New Hampshire, was leased by this corporation. The Keene Bluejays, a baseball team, began operations in Keene in 1948 and played from 15 to 25 night games. In 1949 the average attendance per game was approximately 1,000. In 1949, 1950 and 1951, petitioners purchased equipment and installed it in the theatres which they were operating during the years in issue as follows: 1949
Keene
Claremont
Sound and projector
equipment
$ 1,000.00
$ 1,000.00
Carpet
1,585.70
Chairs and light fixtures
15,888.88
Ticket register
691.95
1950
Furniture and fixtures
70.00
Air conditioning
6,084.38
6,035.65
1951
Furniture and fixtures
15,163.96
Air conditioning
6,474.88
844.80
Machinery and equip-
ment
544.50
Chairs
17,438.72
$46,812.30
$26,011.12
*18 In June 1951, Keene acquired the equipment of the Avon and Ideal theatres in Springfield, Vermont, for $45,574.00 and $20,633.90, respectively. It expended a total of $7,839.43 on air conditioning for those theatres in 1951. Peter Latchis constructed a theatre in Newport, New Hampshire, during the latter part of 1948 and the early part of 1949. The operating assets of this theatre were acquired by Claremont on June 30, 1950, for approximately $21,000. Keene, in order to help finance the purchase of seats and other equipment for its theatres, borrowed $10,000 from a bank in 1950, which loan was outstanding as of June 30, 1950. Keene, as of June 30, 1950, had loans outstanding to shareholders and other businesses owned by the shareholders as indicated by the following accounts receivable balances: Peter D. Latchis
$31,625.56
John D. Latchis
225.18
D. Latchis, Inc.
59,061.06
Metropolitan Realty Corpora-
tion
1,500.00
Office account
6,489.89
All business components of the Latchis family group were short of cash. The joint income tax returns filed by Spero and Angeline Latchis and by John and Eugenia Latchis and the individual income tax return *19 filed by Peter Latchis for 1948 and 1949 showed the following information: 1948 Income
1949 Income
Adj. Gross
Net
Adj. Gross
Net
Spero and Angeline
$15,922.88
$14,922.88
$14,364.54
$13,364.54
John and Eugenia
11,419.29
10,419.29
11,592.33
10,234.43
Peter
15,855.03
12,074.53
23,555.77
21,329.66 Insufficient income was received by the estate of Emmanuel D. Latchis to require it to file tax returns for 1948 and 1949. A final fiduciary return was filed for the taxable year 1950. The value of the estate was in excess of $90,000 and was composed principally of assets of the Latchis enterprises. Petitioners permitted their earnings and profits to accumulate beyond the reasonable needs of their businesses. Petitioners were availed of in the taxable years ended June 30, 1948 and June 30, 1949, for the purpose of preventing the imposition of surtax on their shareholders by permitting earnings to accumulate instead of being divided or distributed. Opinion As the case is presented, petitioners have the burden of proof in regard to all facets of this case. Cf. section 534, I.R.C. 1954. This *20 was the explicit premise under which the parties proceeded at the trial. [1] See Helvering v. Wood, 309 U.S. 344. And as petitioners correctly state, "[the] decision of these cases rests almost exclusively upon questions of fact." Although the ultimate question in a case involving section 102, I.R.C. 1939, is whether earnings and profits were accumulated to prevent the imposition of the surtax upon its shareholders, Pelton Steel Casting Co., 28 T.C. 153, affd. (C.A. 7) 251 F. 2d 278, certiorari denied 356 U.S. 958, a part of the evidence and argument here was directed toward the subsidiary question of whether petitioners' earnings and profits were accumulated beyond the reasonable needs of petitioners' businesses. Section 102(c), I.R.C. 1939. Petitioners were before this Court in Latchis Theatres of Keene, Inc., 19 T.C. 1054, affd. (C.A. 1), 214 F.2d 834, where the year in issue was 1946. We there said (pp. *21 1060-1061): "It must be borne in mind that each petitioner can escape the Commissioner's determination only if it shows that its accumulations for 1946 were reasonably needed in its business. The fact that they might have been needed or that they were actually used in the business of some other entity is wholly immaterial unless it is shown that such needs or use were in fact reasonably necessary to the business of the petitioner. Cf. Stanton Corporation, 44 B.T.A. 56, 80, affd. per curiam 138 F. 2d 512. The members of the Latchis family, operating as a closely knit group, developed rather extensive business interests of which the two petitioner corporations were but a part. The record indicates that the individuals used the various organizations and particularly the funds of those organizations, including the funds of the petitioners, to suit their own convenience, now to start or aid one activity, again to start or aid another. Apparently, the petitioners were on the receiving end in their early days, until they had gotten started successfully, and then idle funds of the petitioners, even in excess of accumulated earnings, were used at the will of the *22 individuals for any purpose of any part of the various businesses which they were conducting. Those purposes, so far as this record shows, were not germane to the business of the petitioners except as they may have enabled the individuals to build up and strengthen their business domain generally. The Latchis family could have put all of their properties in one corporation and operated all of their businesses through that corporation. Then the arguments they make here that the earnings of one activity can be retained to aid or develop another phase of the business would have more force. But they chose, instead, to divide their holdings and business activities among a number of separate corporations in order to limit liabilities and perhaps to obtain other benefits. They must be judged by what they did in this respect rather than by what they might have done. Attention must be focused upon the petitioners. The accumulation of the 1946 earnings of the petitioners, on top of the earnings and capital which they already had, can not be justified by various needs and purposes of other interests of the Latchis family businesses." The same may be said for the years in issue here. Petitioners *23 contend that the earnings and profits now in controversy were accumulated "to meet the competition of drive-in theatres, to meet the impact of television on the theatre business * * *, and to refurnish and refurbish its theatres in order to make them more attractive to customers." They further contend that funds were needed to construct a drive-in theatre and to purchase the operating assets of additional conventional theatres. By the end of 1951, Keene and Claremont had expended $46,812.30 and $26,011.12, respectively, to "refurnish and refurbish" the theatres which they operated during the years in issue. Even if we assume that these expenditures were anticipated and planned during the years in issue, petitioners' burden will not be met. Their earnings and profits accumulated prior to the instant years were more than sufficient to cover these expenses and petitioners have not shown that the amounts actually spent were less than any estimates that may have been made. John Latchis testified that petitioners "considered" building a drive-in theatre during 1947 through 1949. We cannot conclude from such vague and in some respects confusing testimony that any such purpose existed, *24 or if it did that either petitioner as opposed to the Latchis family, or its individual members, had such an intent or accumulated funds for such a purpose. Claremont expended approximately $21,000 in 1950 to acquire the operating assets of a theatre in Newport, New Hampshire, which had been constructed by Peter Latchis the previous year. In 1951, Keene spent $74,047.33 in acquiring the operating equipment and in air conditioning 2 theatres in Springfield, Vermont. Petitioners contend that these purchases were made to protect themselves from competition and that they were planned during the years in issue. However, the only evidence of record with regard to Keene's purchase is that the "Latchis brothers" had "in mind in 1948 and '49 operating a theatre in Springfield, Vermont." We cannot find on the basis of this that Keene, as contrasted with the Latchis interests generally, contemplated during the years involved the purchase of the operating assets of 2 theatres in Springfield. The theatre in Newport was in operation for a year before Claremont acquired its operating assets. The general testimony of one of Claremont's directors and officers that this acquisition was "in contemplation *25 of the directors in 1948 and '49" is not sufficient to carry petitioners' burden of proving that Claremont was accumulating funds during the years in issue to make this purchase. Furthermore, petitioners urge that their financial condition was precarious because they "had substantial assets in the form of accounts receivable from the real estate companies owned by the Latchis family. These real estate companies were in turn dependent upon the success of the operating companies and it was clear to every-one in 1948 nd 1949 that the operating companies could expect sharp declines in revenue in the years ahead as a result of the inroads made by television, drive-in theatres and sporting events." The dim financial picture which petitioners present and the alleged general knowledge of an economic decline in the motion-picture theatre business are incompatible with plans to invest over $95,000 in additional theatres. Here, as in Latchis Theatres of Keene, Inc., supra at 1061-1062, "[no] effort was made to show the amounts needed by either petitioner in the normal month to month operation of their business and examination of the balance sheets and observation of the *26 actual uses made of their funds, particularly loans of those funds, indicate that neither petitioner needed or used more than a few thousand dollars for that purpose."
Petitioners have not shown that their earnings and profits accumulated prior to fiscal 1948 were insufficient to meet any reasonable needs of their businesses as anticipated on June 30, 1948 and June 30, 1949. To the contrary, the additional loans to several of the Latchis enterprises, without interest, during the years in issue are an indication that these funds were not immediately nor prospectively needed in petitioners' businesses. United Business Corporation v. Commissioner, (C.A.2) 62 F.2d 754 [3 USTC ¶ 1039], affirming 19 B.T.A. 809 [Dec. 6020], certiorari denied, 290 U.S. 635.
Had petitioners distributed their current earnings, the three surviving Latchis brothers, petitioners' majority shareholders, would have had a larger surtax liability. The record permits no other conclusion than the finding we have made that petitioners permitted their earnings and profits to accumulate beyond the reasonable needs of their businesses and that each petitioner was availed *27 of during each of the taxable years in issue to prevent the imposition of surtax upon their shareholders by permitting their earnings and profits to accumulate instead of being divided or distributed.
Decisions will be entered for the respondent. Footnotes
1. "The Court: * * * Now, I take it that you're assuming that you have the burden, is that correct? "Mr. Hanna [Petitioners' counsel]: Unfortunately, yes, I am assuming that." (Tr., p. 66.)↩