## WEST BOYLSTON MFG. CO. OF ALABAMA v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9798.

Circuit Court of Appeals, Fifth Circuit.

June 9, 1941.

Robert A. Littleton, of Washington, D. C., for petitioner.

Joseph M. Jones, Sewall Key, and Newton K. Fox, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

What is in question here is whether petitioner, in 1933, owned directly at least 95% of the stock of West Boylston Realty Company, and was, therefore, entitled to file a return reporting therein the consolidated net income of itself and the Realty Company.[1]

The facts are stipulated. In the beginning there was the West Boylston Manufacturing Company of Massachusetts, incorporated in Massachusetts, February 3, 1814, and for many years prior to 1927, a

---

[1] Sec. 141, Revenue Act of 1932, 26 U. S.C.A.Int.Rev.Code, § 141, provides: "(a) Privilege to file consolidated returns. An affiliated group of corporations shall * * * have the privilege of making a consolidated return for the taxable year in lieu of separate returns. * * * (d) Definition of 'affiliated group'. As used in this section an 'affiliated group' means one or more chains of corporations connected through stock ownership with a common parent corporation if—

"(1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations; * * *."

manufacturer of tire fabric. In 1927, it caused West Boylston Manufacturing Company of Alabama to be incorporated, to own and operate a textile mill in that state, and it subscribed to and had issued to it, its entire capital stock, 15,000 shares. In 1932, the Massachusetts Company put into effect a plan of reorganization and liquidation. Pursuant thereto: West Boylston Realty Company was formed and in exchange for its entire issue of capital stock, the real estate and other assets of the Massachusetts Company, exclusive of some cash and stock in the Alabama Company, was transferred to the Realty Company; the charter of the Alabama Company was amended, its 15,000 shares of no par value common stock were converted into 8,100 shares of preferred and 6,250 of common stock; the Massachusetts Company then transferred to its stockholders one share of Alabama preferred for each two shares of its preferred, and one share of Alabama common for each eight shares of its common stock, paid its shareholders a liquidating dividend of $13 per share, and dissolved. Before doing so, however, it caused the stock of West Boylston Realty common to be delivered to the Alabama Company as trustee under an indenture providing; that the Realty stock and all proceeds, dividends and assets received therefrom by the Alabama Company, "shall, so long as any of the company's preferred stock remains outstanding, be held by it solely for the use and benefit of its preferred stockholders and for no other purpose, and shall be, at all times, kept separate and distinct from and not in any way comingled with the assets of the Alabama Company so that the Realty as-

sets may be preserved for the use and benefit of Alabama preferred stockholders."

The indenture; made provision for liquidation and sale of the Realty Company's assets, for the payment of receipts therefrom as liquidating dividends to the Alabama Company as trustee for its preferred shareholders; provided that the Alabama preferred stock should be retired from such funds; and that any excess after the full redemption of the preferred stock should then be controlled by the first party for the use and benefit of its common stockholders, "the first party paying over to its common stockholders all proceeds therefrom, first party having no personal interest therein."

In further emphasis and re-emphasis of the fact that the Alabama Company was not the owner of and had no interest in Realty Company's stock, the indenture made several further provisions.[2]

The liquidation proceeded as planned and this controversy arises because while the Alabama Company in the tax year in question, had a large net income of $74,789.03 as reported by it, the Realty Company had a large net loss of $66,487.47, and the consolidated net income as reported by the Alabama Company was only $8,301.56. The commissioner, on a redetermination, found petitioner's separate net income, $94,381 and petitioner accepts this determination, but holding that the Alabama Company and Realty Company were not affiliated so as to entitle the Alabama Company to make a consolidated return, he rejected the reduction of the Realty Company's net loss, $66,487.47. It is this rejection which was complained of below and is complained of here.

[2] One of these was; that as a part of the plan of liquidation, it was provided that the assets of the Massachusetts Company transferred to the Realty Company and the capital stock of the Realty Company issued in payment and exchange therefor, "were and are assets of the Massachusetts Company in which the Alabama Company had and has no beneficial interest whatsoever, the same belonging to the Massachusetts Company; and, as a part of the plan it was provided that the entire capital stock of West Boylston Realty Company belonging to the Massachusetts Company, should be transferred to and held by the Alabama Company, not in any manner as its assets, but solely for the use and benefit of its preferred shareholders, so long as it is outstanding and until the same have been paid in full and retired."

Another was: "first party has paid nothing for said shares of stock and has no beneficial interest therein or in the proceeds or dividends therefrom, but is holding the same solely for the use and benefit of its preferred stockholders. * * * "

Still another was: "That its preferred shareholders who had agreed to this plan had done so with the distinct agreement that at no time shall said shares of stock of the Realty Company be treated as assets of the Alabama Company or be in any wise subject to the rights of any of its creditors, it having no beneficial interest in any of said shares of stock."

Finally there was a provision that if the Alabama Company should dissolve before the purposes of the indenture were fully carried out, any of the preferred stockholders could enforce its terms.

Petitioner argued below and urges here, that without regard to the form the transaction took, the substance of the whole matter is that Massachusetts West Boylston Company was the common parent of both the Alabama Company and the Realty Company, its stockholders were the stockholders of both companies; and that notwithstanding the fact that the Realty Company's stock was transferred to and held by the Alabama Company as trustee, the Realty Company's stock was "directly owned" by it, and within the statute, the two companies were affiliated.

The commissioner admitted below and admits here, that as long as the Massachusetts Company owned the stock of both companies, there was a statutory affiliation, and if the Massachusetts Company were still the owner, of all the stock, it could make an affiliated return. He points out however that; the Massachusetts Company is no longer in existence, and the question is not what it could have done if it were in existence; the question is what the Alabama Company can do. He insists that in the face of the precise and definite arrangements under which it took transfer of the Realty stock, arrangements made to prevent its being or becoming owner, it cannot be said that for tax purposes, petitioner is such owner. We agree with the commissioner and the board.

 It is true enough as contended by petitioner, that "questions of taxation must be determined by viewing what was actually done rather than the declared purpose of the participants; and when applying the provisions of the 16th Amendment, and income tax laws thereunder, we must regard matters of substance and not form. Weiss v. Stearn, 265 U.S. 242 [44 S.Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520]."

██ But, there is here no conflict between the form the matter took and the substance of it. The form it took was to vest the legal title in the Alabama Company, the beneficial ownership in the preferred stockholders, and this is precisely what in substance occurred. Ownership by its preferred stockholders is not ownership by the Alabama Company. Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399. Indirect or qualified ownership by the Alabama Company does not meet the requirements of the statute. Commissioner v. Trustees, 7 Cir., 100 F.2d 18; Connery Coal & Inv. Co. v. Commissioner, 7 Cir., 84 F.2d 485.

Here by careful formulation, extended to painstaking detail, the relation of the Alabama Company to the Realty Company's stock was so defined that it would not be possible for anyone to claim that the Alabama Company was owner of the stock. "It is true that in tax matters the courts must regard the substance rather than the mere form of the transaction; but effect must be given to what persons have done rather than what they say they intend. * * * Much less can courts regard that which might have been done but was never even attempted." Clemmons v. Commissioner, 5 Cir., 54 F.2d 209, 211. Cf. Valley Waste Mills v. Page, 5 Cir., 115 F.2d 466.

Petitioner does not argue, as we understand it, that despite everything that was done in the indenture to effect the opposite result, the parties to the transfer to, and indenture with the Alabama Company, intended to make, and did make it, the beneficial owner of the Realty Company's stock. Its argument seems to be that this situation is the result of the effort of the Massachusetts Company, which originally owned all the stock in all the companies, to make all of the assets of its two companies, the Alabama Company and the Realty Company, available to all of its stockholders, preferred first, common next, and the form used was just a device to make this result certain. It insists therefore, that for tax purposes, the form must be disregarded and the matter must be treated as though petitioner the Alabama Company, had succeeded to the position of the Massachusetts Company as the direct owner of all the stocks of the two companies. But nothing is clearer than that "fraudulent pretense absent, the government accepts the taxpayer as it represents itself to be, and one may not, chameleon like, change that appearance to suit his necessity or his convenience." Planters Cotton Oil v. Hopkins, 5 Cir., 53 F.2d 825, 827; affirmed 286 U.S. 332, 52 S.Ct. 509, 76 L.Ed. 1135. "A taxpayer is free to adopt such organization for his affairs as he may choose and having elected * * * he must accept the tax disadvantages." Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 358, 84 L.Ed. 406; Cf. Edwards v. Chile Copper Company, 270 U.S. 452, 456, 46 S.Ct. 345, 70 L.Ed. 678.

It would not be in accordance with but in the face of the facts as petitioner has itself created them, to hold that within the Statute, it, and not its preferred stockholders, directly owns the Realty Company stock.

The order of the Board is affirmed.