BURNET, COMMISSIONER OF INTERNAL REVENUE, *v.* COMMONWEALTH IMPROVEMENT CO.

No. 95. Argued November 14, 1932.—Decided December 12, 1932.

*Assistant Attorney General Youngquist,* with whom
*Solicitor General Thacher,* and *Messrs. Whitney North
Seymour, Sewall Key,* and *John H. McEvers* were on the
brief, for petitioner.

*Mr. Schofield Andrews,* with whom *Mr. Ellis Ames
Ballard* was on the brief, for respondent. ˙

MR. JUSTICE McREYNOLDS delivered the opinion of the
Court.

Respondent—Commonwealth Improvement Company—
all of whose shares are owned by the Estate of P. A. B.
Widener (he died in 1915), made return concerning in-
come and excess profits taxes for 1920 wherein it claimed
deduction for loss occasioned by transfer of British-
American Tobacco Company stock to the Estate. The
Commissioner refused to allow the deduction and found
that rightly regarded the transaction had yielded gain to
the taxpayer. A deficiency assessment followed.

The Board of Tax Appeals approved the Commis-
sioner's action; but the Circuit Court of Appeals, Third
Circuit, held otherwise. [57 F. (2d) 47.]

Having acquired control of the Commonwealth Im-
provement Company, incorporated under an old Pennsyl-
vania charter, Mr. Widener caused an increase of its
capital stock and authorization of $20,000,000 script and
debentures. He then—May 1, 1912—conveyed to the
corporation sundry stocks valued at $25,000,000 taking
in payment all its shares and $20,000,000 in debentures
and script. He was old and the double purpose was to
avoid multifold death duties or transfer taxes and to
insure the safety of an endowment which he wished to

donate to a favorite charity—School for Crippled Children. $4,000,000 of the debentures so received were promptly deposited in trust for the benefit of that School.

Among the securities transferred by Widener to respondent were 225,000 shares British-American Tobacco Company. Their market value March 1, 1913, was $5,315,625—$23.625 per share.

In 1919 the Improvement Company, under privilege extended to stockholders, subscribed for and received 75,000 new shares then issued by the British-American Company. Paying therefor $326,437.50—$4.3525 per share—much less than market value.

In 1920 the trustees of the Estate acquired the 4,000,-000 of respondent's debentures theretofore deposited for benefit of the School. These were transferred to respondent and in part payment it transferred to the Estate the original block (the identical certificates) of 225,000 British-American Tobacco Company shares valued at $5,287,500—$23.50 per share. The apparent result was sale of the whole block at twelve and one-half cents per share under the March 1, 1913, value with consequent net loss of $28,125.00. For this sum respondent claimed deduction upon its 1920 tax return.

When the Commissioner audited the return he decided that the base value per unit (for taxation purposes) of the 225,000 shares British-American Tobacco Company, transferred as shown, should be ascertained by adding to their total market value March 1, 1913—$5,315,625.00—the total paid for the 75,000 shares acquired in 1919, $326,-437.50 and dividing the resulting sum by 300,000. The quotient, $18.806,875, he held was the base cost of each transferred share. Accordingly, he found a gain by respondent of $1,055,953.12 and made an appropriate deficiency assessment.

In brief and argument here respondent advances two points. First, it is said the Commissioner improperly

reckoned the base value of the British-American Tobacco Company shares. Second, that under the peculiar facts of the cause the transaction under consideration resulted in no true loss or gain. Respondent was merely the agency or instrumentality of the trustees of the Estate in administering their trust. Practically considered, the Improvement Company and the Estate are the same entity.

The Board of Tax Appeals expressed no opinion concerning the Commissioner's method of reckoning—it was not requested so to do. There the respondent relied entirely upon the second point. The Circuit Court of Appeals ruled only on the same point. In such circumstances, we do not undertake to determine what was not considered below.

Upon the second point we think the Board of Tax Appeals reached the right conclusion; the judgment of the Circuit Court of Appeals must be reversed.

Among other things, the Board well said—

"The petitioner does not now argue before the board that the method of computing the gain was incorrect, but relies entirely upon its contention that the corporation and the estate are the same entity. If this contention were logically applied it would follow that all income received by the corporation since its organization was properly taxable as income of P. A. B. Widener and his estate and should have been added to any other income which Widener and his estate received during these years and taxed at the rates applicable to individuals rather than returned by the petitioner and taxed at the rates fixed for corporations. For the purposes of inheritance and transfer taxes imposed by the various States upon the transfer of the stocks owned by petitioner the corporate entity should have been disregarded upon the death of Widener and these stocks subjected to whatever taxes would have been payable had they been owned by the decedent. But

petitioner does not seek to carry its contention to such a conclusion. Having enjoyed the benefits which resulted from its separate existence, it seeks to perpetuate those benefits and asks that the separate existence and tax liability of the petitioner and its single stockholder be overlooked only with respect to transactions which take place between them. That this is an afterthought is plainly evidenced by the action of petitioner in claiming a deduction upon this same transaction when it believed a deductible loss had been sustained. . . .

" The fact is that petitioner did have a separate legal existence with privileges and obligations entirely separate from those of its stockholders. The fact that it had only one stockholder seems of no legal significance. *Cannon Mfg. Co.* v. *Cudahy Co.*, 267 U. S. 333."

Counsel for respondent concede that ordinarily a corporation and its stockholders are separate entities, whether the shares are divided among many or are owned by one. Consequently, they make no effort to support any general rule under which a corporation and its single stockholder have such identity of interest that transactions between them must be disregarded for tax purposes. They submit, however, the peculiar facts here disclosed suffice to show there was really no income, nothing properly taxable as such. They refer to *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330 and *Gulf Oil Corp.* v. *Lewellyn*, 248 U. S. 71, not as controlling but as instances where the court looked through mere form and regarded substance.

While unusual cases may require disregard of corporate form, we think the record here fails to disclose any circumstances sufficient to support the petitioner's claim. Certainly, the Improvement Company and the Estate were separate and distinct entities; the former was avowedly utilized to bring about a change in ownership beneficial to the latter. For years they were recognized and

treated as different things and taxed accordingly upon separate returns. The situation is not materially different from the not infrequent one where a corporation is controlled by a single stockholder. See *Eisner* v. *Macomber,* 252 U. S. 189, 208, 209; *Lynch* v. *Hornby,* 247 U. S. 339, 341; *United States* v. *Phellis,* 257 U. S. 156, 172, 173.

*Southern Pacific Co.* v. *Lowe, supra,* and *Gulf Oil Corp.* v. *Lewellyn, supra,* (the latter covered in principle by the first,) cannot be regarded as laying down any general rule authorizing disregard of corporate entity in respect of taxation. These cases presented peculiar situations and were determined upon consideration of them. In the former this court said [p. 338]—" The case turns upon its very peculiar facts, and is distinguishable from others in which the question of the identity of a controlling stockholder with his corporation has been raised. *Pullman Car Co.* v. *Missouri Pacific Ry. Co.,* 115 U. S. 587, 596; *Peterson* v. *Chicago, Rock Island & Pacific Ry. Co.,* 205 U. S. 364, 391."

*Reversed.*