BERTHA M. BAILEY AND W. C. BAILEY, JR., EXECUTORS OF THE ESTATE OF WALTER C. BAILEY, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BERTHA M. BAILEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 75993, 75994. Promulgated April 13, 1938.

*George R. Beneman, Esq., D. Hays Solis-Cohen, Esq.*, and *D. Benjamin Kresch, Esq.*, for the petitioners.

*D. A. Taylor, Esq.*, for the respondent.

650

652

OPINION.

LEECH: The two issues presented for decision are (1) whether Walter C. Bailey and his wife were taxable on their receipt of Reyburn Corporation stock in 1931 and the proper measure of that tax if they are taxable, and (2) the correctness of the imposition of the tax on the sale of the New Jersey building by Walter C. Bailey to Reyburn Corporation, which has been paid.

The respondent treated Walter C. Bailey, deceased, and his wife, as being in receipt of ordinary taxable dividends in their receipt of Reyburn Corporation stock, and so taxed them under the provisions of the Revenue Act of 1928, section 115. The petitioners contend that the receipt of that stock was not so taxable because of the provisions of section 112 (g) of the same revenue act.

Respondent argues that the transaction constituted a mere subterfuge by which Bailey and his wife, in effect, secured the distribution of a dividend from the Manufacturing Co., consisting of $365,000 of the surplus of that corporation which Bailey had borrowed from the corporation on his own notes.

Obviously, since Bertha M. Bailey was not a party to that borrowing and did not receive any part of it, she can not now be taxed on the theory that she did, unless we refuse to recognize Walter C. Bailey and his wife as two separate taxpayers. That premise would be unsound. *Frank B. Gummey*, 26 B. T. A. 894; *Joseph E. Uihlein*, 30 B. T. A. 399; sec. 51 (b), Revenue Act of 1928.

Whether Bailey's borrowings from the Manufacturing Co., under the circumstances, might have been taxed as dividends to Bailey on their receipt, is not the question here. Because the business of the Manufacturing Co. under its charter did not include the loaning of money does not alter the fact that, on this record, it did loan money and that the notes evidencing those loans were assets of the company. Not only that, but the respondent did not consider these loans as dividends then and he does not do so now. The pending deficiencies involve a year after those in which the loans were made. Respondent supports these deficiencies against Bailey's estate and his widow by treating Bailey's notes as corporate assets distributed in the tax year as ordinary dividends, not only to him but to his wife, who was not a party to the loans and did not receive any part of them.

Respondent agrees that the distribution of Reyburn Corporation stock to Walter C. Bailey and his wife, Bertha M. Bailey, falls literally within the provisions of section 112 (i) (1) (B). He admits that if this distribution occurred "in pursuance of a plan of reorganization" within the meaning of section 112 (g), no taxable gain resulted to the Baileys by reason of the receipt of the Reyburn Corporation stock. Respondent rests his position solely on the proposition that the Manufacturing Co.'s exchange of part of its assets in the form of the Bailey notes for all of the stock of the Reyburn Corporation was not "in pursuance of a plan of reorganization" as construed by the Supreme Court in *Gregory* v. *Helvering*, 293 U. S. 465.

The facts in the *Gregory* case were briefly as follows: In 1928, G owned all of the stock of U corporation. Among the assets of U corporation were 1,000 shares of the stock of M corporation. For the sole purpose of diminishing the amount of income tax on the sale of the M corporation stock, G caused the Averill Corporation to be organized. The Averill Corporation then acquired from the U corporation the stock of M corporation in return for the issuance to G of all of the stock of Averill Corporation. Six days after it was organized, Averill Corporation was dissolved and liquidated by distributing all of its assets, namely, the stock of M corporation, to G. No other business was ever transacted or intended to be transacted by Averill Corporation. G immediately sold the M shares. In reporting the gain from the sale for tax, G apportioned to the M shares part of the cost to G of the stock of U corporation. The issue was whether the entire gain from the sale of the M shares was taxable to G as an ordinary dividend from the U corporation. The Supreme Court decided that it was. In so holding, the Court held that while the transaction literally complied with section 112 (g) of the Revenue Act of 1928, the exchange of the stock by U for Averill stock was not within the meaning of the statutory term, "in pursuance of a plan of reorganization." The Supreme Court, *inter alia*, said:

* * * When subdivision (B) speaks of a transfer of assets by one corporation to another, it means a transfer made "in pursuance of a plan of reorganization" (section 112 (g)) of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having no relation to the business of either * * *.

Undoubtedly included within the "plan of reorganization" here were the organization of Reyburn Corporation, the exchange by the Manufacturing Co. of Bailey's notes for the stock of Reyburn Corporation, the distribution of that stock, pro rata, to the shareholders of the Manufacturing Co. without the surrender of their stock in that company, and the purchase by Reyburn Corporation of Bailey's New Jersey building, and its subsequent operation. See *Edison Securities Corporation*, 29 B. T. A. 483; affd., 78 Fed. (2d) 85; 34 B. T. A. 1188

654

If the plan was motivated solely by a purpose to escape tax, it would have had "no relation to the business of either [corporation]." *Gregory* v. *Helvering, supra; Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378. But the fact that tax avoidance or postponement was considered incidentally with a proper purpose or that such tax consequences followed is not material. *Gregory* v. *Helvering, supra.*

The *Gregory* case is readily distinguishable on its facts. The Manufacturing Co. was organized in 1895. Its reality and validity have not been and can not be questioned. Its dissolution was neither planned nor effected. It still exists. Nor was it planned that the Reyburn Corporation dissolve, nor did it do so, as a part of the "plan." See *Robert R. McCormick, Executor*, 33 B. T. A. 1046.

Respondent has disregarded that latter fact here and has imposed the tax upon receipt of the Reyburn Corporation stock in 1931 by Walter C. Bailey and his wife. He does this on either of two theories. The first is that Reyburn Corporation is not to be recognized as a legal entity. The second position, apparently, is that even if Reyburn Corporation is to be so recognized, "the plan", in pursuance of which the Manufacturing Co. exchanged part of its assets for all of Reyburn Corporation's stock, was prompted solely or primarily by a desire to avoid income taxes.

We disagree with both theories. There is no more reason to disregard the entity of Reyburn Corporation than that of the Manufacturing Co., the entity of which is admitted. *Gregory* v. *Helvering, supra; Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415; *Jones* v. *Helvering*, 71 Fed. (2d) 214. In the *Gregory* case the Supreme Court specifically recognized the valid corporate entity of even the Averill Corporation, and there is much more substance and reality to Reyburn Corporation here. Undoubtedly it was organized for a business purpose. Whether the holding of the Bailey notes was such a purpose or not, the ownership and operation of the office building which it proposed to and did purchase from Walter C. Bailey, was. Thus, instead of dissolving and liquidating immediately after its receipt of assets from the Manufacturing Co. and the distribution of its stock to the stockholders of the latter company, Reyburn Corporation fulfilled its business purpose by owning and operating that building for a period of three years.

It was not until the end of that period, when foreclosure became imminent, that it then deeded the building to a corporation representing the owners of the second trust, rather than permit foreclosure. After that foreclosure and the death of Walter C. Bailey, Reyburn Corporation did dissolve and liquidate by offsetting its assets in the form of the Bailey notes against its own purchase money obligations in the same amount which the estate of Bailey held. It was then and not when the Reyburn Corporation stock was distributed to the

Baileys that they received Manufacturing Co. assets in the form of Bailey's notes. Until that liquidation occurred, petitioners were no closer to the exchanged assets than they were before and even then they were not received by them as a liquidating distribution.

Assuming, without deciding, the propriety of extending the rule announced by the Supreme Court in the *Gregory* case to a situation where, as here, dissolution and liquidation of the transferee corporation did not occur as part of "the plan", we think the rule can not be applied here. The elimination of the Bailey notes from the accounts receivable of the Manufacturing Co. was imperative to the maintenance and protection of its credit. The disposition or elimination of that item could have been accomplished in many ways. Undoubtedly the tax results of the plan as adopted and executed were considered. But this record convinces us that the motivating reasons for that plan were the necessary preservation of the credit of the Manufacturing Co. by the elimination of Bailey's notes from its accounts receivable and the segregation of those notes in the Reyburn Corporation with the New Jersey building which had been purchased by Bailey with the proceeds of those notes.

The owning and operation of the New Jersey building by the Reyburn Corporation may not have been related to the business of the Manufacturing Co. However, the transfer of the Bailey notes to Reyburn Corporation was thus related. The maintenance and protection of its own credit, thus accomplished, was directly and necessarily related to the business of the Manufacturing Co. That, in itself, is sufficient to characterize the plan which included the exchange by the Manufacturing Co. of the Bailey notes, a part of its assets, for all the Reyburn Corporation stock, as a "plan of reorganization" within section 112 (i) (1) (B), *supra*, as construed by the Supreme Court in the *Gregory* case, *supra*.

It follows that the distribution of the Reyburn Corporation stock to Walter C. Bailey and his wife, Bertha M. Bailey, without the surrender of their Manufacturing Co. stock was within the provisions of section 112 (g), *supra*, and was, therefore, not taxable. *Gregory* v. *Helvering, supra; Helvering* v. *Minnesota Tea Co., supra; Bremer* v. *White*, 10 Fed. Supp. 9; *Bruce* v. *Helvering*, 76 Fed. (2d) 442; *Ballwood Co.* v. *Commissioner*, 84 Fed. (2d) 733.

We decide the second issue for respondent. We can not agree with petitioners' contention that the payment for the account of the late Walter C. Bailey of $5,781.25 as additional tax and interest upon a claimed profit accruing from his sale of the New Jersey property to Reyburn Corporation constituted an overpayment of tax to a refund of which his estate is entitled. The property in question was sold to Reyburn Corporation for a consideration in excess of its cost to Walter C. Bailey. This consideration was paid in notes of the pur-

chaser. It is now argued by the executor that the property thus conveyed had no value. Consequently, they say it did not constitute an asset in the hands of the purchaser, that the only assets possessed by Reyburn Corporation standing back of its notes for $365,000 given to Bailey in the purchase were the notes in the same amount due from Bailey, which had been acquired by Reyburn Corporation in exchange for its stock and that these latter notes were uncollectible.

We are not impressed with this argument. It is not contended that Bailey was insolvent and the evidence shows that he was receiving a very large yearly income. Moreover, the notes of the face value of $365,000 received by him from Reyburn Corporation were usable to their full face value by his estate as an offset to notes in the same amount due from him and held by that corporation. Since the Reyburn Corporation notes received could have been used at any time by Bailey to save or offset the payment by him of $365,000, we think these notes had a value in his hands equal to their face value in view of the fact that his insolvency is not only not established but is contradicted. The record does not sustain the payment of this item as an overpayment of tax.

*Decision will be entered under Rule 50.*