ARCHIBALD R. WATSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 87873, 88048, 89650. Promulgated June 13, 1940.

---

*George B. Chandless, Esq., Harold Dudley Greeley, Esq.,* and *William R. Green, Jr., Esq.,* for the petitioner.
*Conway Kitchen, Esq.,* for the respondent.

58

## OPINION.

LEECH: That a corporation and its stockholders are separate entities is too well established to require the citation of authorities. Likewise settled is the rule that only in exceptional cases, for tax purposes, will

those separate entities be disregarded. *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415; *Burnet v. Clark*, 287 U. S. 410; *Dalton* v. *Bowers*, 287 U. S. 404; *Louis W. Gunby, Inc.*, 41 B. T. A. 884. One such exceptional case of which the taxpayer may take advantage is where his corporation is merely holding title to real estate, and he has consistently disregarded its separate entity in tax matters. *North Jersey Title Insurance Co.* v. *Commissioner*, 84 Fed. (2d) 898; *Mark A. Mayer*, 36 B. T. A. 117; *Moro Realty Holding Corporation*, 25 B. T. A. 1135; affd., 65 Fed. (2d) 1013.

We do not understand that the recent decision of the Supreme Court in *Higgins* v. *Smith*, 308 U. S. 473, intended to disturb the validity of the rule or that exception. See *Carling Holding Co.*, 41 B. T. A. 493. Rather, it definitely adds a distinct class of cases to the exceptions. This class includes only certain cases where the Government, and not the taxpayer, may refuse to consider these entities as separate See *Valuation Service Co.*, 41 B. T. A. 811.

The first issue is whether petitioner may deduct taxes and interest on the properties the title to which was held by the Nissequogue Realty Corporation and the Meadow Road Improvement Corporation. These properties constituted his summer residence. Title was so held only to facilitate transfer of title because his wife, who would otherwise have to join in the execution of the deed, spent most of her time abroad. This action was not motivated by any intent of the taxpayer to avoid, postpone, or reduce his taxes. He has consistently disregarded their separate entities in income tax matters. All the stock of these corporations was held by petitioner, and they performed no function save that of holding title. They were not doing business. See *Chase National Bank, Trustee*, 41 B. T. A. 430. The taxes and interest were actually paid by petitioner.

We think that the corporate entities of these two corporations may properly be disregarded, in the light of the recent case of *Carling Holding Co., supra.* In that case the corporation, whose entity was disregarded, was formed by a bondholders' committee to hold title to property in process of foreclosure. Its only activity was to receive rents from the property and transmit them to the committee to be used to defray expenses of the latter. The instant situation is even more appropriate for disregarding corporate entity in that the two corporations now under consideration received no income at all and had no bank accounts. The case of *Burnet* v. *Commonwealth Improvement Co., supra*, contains nothing at variance with our conclusion, for there tax advantages had previously been secured by the taxpayer's treating the corporation and the estate as two separate entities, whereas here, petitioner has always been consistent in his disregard of corporate entities and has never obtained tax advantages by invoking an opposite theory. The *Commonwealth Improvement* case is also distinguishable

in that the corporation there had income and bought and sold securities. Accordingly, we hold that petitioner may deduct amounts paid as mortgage interest and taxes on the land held by these two corporations.

The other issues are whether petitioner may deduct losses incurred by his wholly owned corporations, the United States Review Corporation and Living Age Corporation, and whether petitioner is entitled to carry over a 1932 net loss thus determined, so as to deduct it from his 1933 income.

To sustain petitioner in the first of these two issues, requires us to disregard the corporate entities of the United States Review and Living Age corporations. These corporations were doing more than just holding title to assets. They were publishing magazines for profit. They were doing business. It may be that the circumstances indicate that, for all practical purposes, the petitioner was the corporation. However, that was so in *Burnet* v. *Commonwealth Improvement Co.*, *supra*. There, as here, the taxpayer voluntarily assumed the corporate form *for carrying on business* and then sought to avoid the tax consequences of that status by disregarding it for tax purposes. On the authority of that case, which was reaffirmed in *Higgins* v. *Smith*, *supra*, we must consider these corporations as having entities here separate from those of their stockholder. See also *Burnet* v. *Clark*, *supra; Dalton* v. *Bowers*, *supra.*

As an alternative contention, petitioner seeks to deduct the difference between the total of his advances to these corporations and the value of his liquidating interest therein as bad debts. Respondent urges that the debts thus sought to be charged off by petitioner and deducted in 1932, 1933, and 1934 were really worthless in 1931. He points to the facts that the Living Age Corporation had a deficit in 1931 of $7,232.42 as compared with $12,508.10 in 1932, that it had net losses of $8,096.11 in 1931 as compared with $5,275.68 in 1932, and that the value of its assets at the close of 1931 was $11,648.95 as compared with $10,907.22 at the close of 1932, whereas its liabilities exclusive of capital stock were, respectively, $44,288.87 and $48,822.82. He emphasizes the similar situation in respect of the United States Review Corporation. He thus contends that petitioner may not "close his eyes to the obvious" and deduct accounts as worthless in a year subsequent to the one in which he must be presumed to have ascertained their worthlessness, citing *Avery* v. *Commissioner*, 22 Fed. (2d) 6. Although under all the circumstances, implicit in this record, the validity of this position may be doubted, *C. H. White*, 15 B. T. A. 1375, we pass the point.

It may be that these contested advances were not loans, but capital investments. It seems unnecessary to decide that question. In any

event, the action of petitioner in continuing to put money into these corporations year after year, in the face of steady losses, deficits, and book insolvencies, the perseverance of these corporations in the magazine publishing business and other evidence negative the existence in the tax years of any factual premise upon which to predicate a reasonable ascertainment of worthlessness of these advances, if they be such, *John W. Sherwood*, 8 B. T. A. 103; *Squier v. Commissioner*, 68 Fed. (2d) 25; *Powers Manufacturing Co. v. Commissioner*, 34 Fed. (2d) 255; *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566, 580; *Rogers Peet Co.*, 21 B. T. A. 577, or to identify the occasion of a loss, if they were capital investments. *Olds & Whipple, Inc. v. Commissioner*, 75 Fed. (2d) 272; *Sterling Morton*, 38 B. T. A. 1270.

This conclusion renders unnecessary any decision on the remaining issues.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN, MURDOCK, and MELLOTT dissent on the first issue.