**ATLANTIC REFINING CO. v.
UNITED STATES.**

No. 44001.

Court of Claims.

Oct. 5, 1942.

894

H. B. McCawley, of Washington, D. C. (Warren W. Grimes, of Washington, D. C., on the brief), for plaintiff.

Daniel F. Hickey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

This is a suit for the recovery of capital stock tax paid by plaintiff for the year ending June 30, 1935. The only issue involved is whether plaintiff's adjusted declared value of its capital stock shall be increased by the entire amount of a dividend declared by plaintiff's wholly owned subsidiary corporation on December 24, 1934.

Plaintiff is a Pennsylvania corporation which has been engaged in the refining and marketing of petroleum products for many years. In 1927 it owned the stock of various subsidiary corporations which were engaged in the production and transportation of crude petroleum. In that year, in order to facilitate the preparation of its Pennsylvania State capital stock tax return and bring about a situation more favorable to itself in the amount of tax which it would be required to pay under such return, it caused to be organized the Atlantic Company under the laws of Maine and transferred to the Maine Company all the stock of these subsidiary corporations in exchange for the stock of the Maine Company. During the period from 1927 to 1931 various sums were transferred between plaintiff and the Maine Company as the needs or desires of the two companies required, but by the end of 1931 whatever amounts had been transferred were adjusted between the two companies.

From the beginning of .1932, amounts continued to be transferred from the Maine Company to plaintiff and at the end of each six months plaintiff would give to the Maine Company its demand promissory note for whatever amounts had been transferred during the six months' period. Pursuant to that arrangement plaintiff gave to the Maine Company two promissory notes in 1932 (one on June 30, 1932, in the amount of $2,270,000, and another on December 31, 1932, for $1,225,000), and two similar notes in 1933 (one on June 30, 1933, in the amount of $3,290,000, and another on December 31, 1933, for $2,915,000). Further transfers were made by the Maine Company to plaintiff during 1934 with the result that in December 1934 there was owing by the plaintiff to the Maine Company the sum of $14,592,230, and on December 24, 1934, the Maine Company adopted a resolution declaring a dividend in the total amount of the indebtedness. With the adoption of that resolution, the notes which had been given were canceled and marked paid as of December 31, 1934. In its income-tax return for 1934, plaintiff showed the entire amount of the dividend declaration ($14,592,230) as having been received in 1934 and deducted that amount in computing its taxable net income for that year.

Section 701 of the Revenue Act of 1934[1] provides among other things that in determining the adjusted declared value of a corporation's capital stock for the purpose

[1] Section 701 of the Revenue Act of 1934, 48 Stat. 680, 769, 26 U.S.C.A. Int. Rev.Acts, page 787, provides in part as follows:

"(a) For each year ending June 30, beginning with the year ending June 30, 1934, there is hereby imposed upon every domestic corporation with respect to car-

of the capital stock tax for the year subsequent to the original declaration, the corporation shall take the original declared value and make various adjustments thereto, by way of additions and deductions, on account of transactions which occurred during the year subsequent to that for which the original declaration was made. Among the additions provided in that section is the "amount of the dividend deduction allowable for income tax purposes." Section 23 of the same act, 26 U.S.C.A. Int.Rev.Acts, page 671, provides that in computing net income for income tax purposes there shall be allowed as a deduction "the amount received as dividends from a domestic corporation."

When plaintiff came to prepare its capital stock tax return for the fiscal year ending June 30, 1935, it took the adjusted declared value which it had used for the previous fiscal year and made certain additions to and deductions from that amount as required by section 701, supra, except that when it came to adjust for dividends received during that year it made no addition to its adjusted declared value on account of $9,700,000 of the dividend of $14,592,230 which was declared by the Maine Company December 24, 1934, and payable December 31, 1934, and for which a deduction was taken in computing its taxable net income for 1934. On examination of the return, the Commissioner added that amount to plaintiff's adjusted declared value of its capital stock and on account thereof assessed and collected an additional tax of $9,700 plus interest.

Our only question is whether the Commissioner properly increased plaintiff's adjusted declared value of its capital stock on account of the entire dividend declaration of December 24, 1934.

 Plaintiff's position is that these amounts which make up the $9,700,000 should be looked on as if they were dividends when they were transferred to the plaintiff in 1932 and 1933 and that the dividend declaration in 1934 was without significance. In effect it would have us say that when the amounts were transferred by the Maine Company to plaintiff and notes given by plaintiff, there was in fact no liability of plaintiff to the Maine Company but that these amounts were dividends by the Maine Company to plaintiff in 1932 and 1933. We disagree. The Maine Company was formed by plaintiff for its own con-

---

rying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock.

\* \* \* \* \*

"(f) For the first year ending June 30 in respect of which a tax is imposed by this section upon any corporation, the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section (or as of the date of organization in the case of a corporation having no income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section). For any subsequent year ending June 30, the adjusted declared value in the case of a domestic corporation shall be the original declared value plus (1) the cash and fair market value of property paid in for stock or shares, (2) paid in surplus and contributions to capital, (3) its net income, (4) the excess of its income wholly exempt from the taxes imposed by Title I over the amount disallowed as a deduction by section 24 (a) (5) of such title, and (5) the amount of the dividend deduction allowable for income tax purposes, and minus (A) the value of property distributed in liquidation to shareholders, (B) distributions of earnings or profits, and (C) the excess of the deductions allowable for income tax purposes over its gross income; adjustment being made for each income-tax taxable year included in the period from the date as of which the original declared value was declared to the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section. The amount of such adjustment for each such year shall be computed (on the basis of a separate return) according to the income tax law applicable to such year. For any subsequent year ending June 30, the adjusted declared value in the case of a foreign corporation shall be the original declared value adjusted (for the same income-tax taxable years as in the case of a domestic corporation), in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, to reflect increases or decreases in the capital employed in the transaction of its business in the United States."

896

venience in order to gain an advantage under the Pennsylvania State capital stock tax law, and after having enjoyed the benefits which resulted from its separate existence it would now have that separateness disregarded. As the Supreme Court said in Higgins v. Smith, 308 U.S. 473, 477, 478, 60 S.Ct. 355, 357, 84 L.Ed. 406:

" * * * the taxpayer, for reasons satisfactory to itself voluntarily had chosen to employ the corporation in its operations. A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages.

"On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property."

See, also, Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399.

The case of Anketell Lumber & Coal Co. v. United States, 1 F.Supp. 724, 76 Ct.Cl. 210, cited by plaintiff, is easily distinguishable from the case at bar. In that case it was a family owned corporation. No notes were given. The withdrawals were not for the benefit of the corporation, but for the personal advantage of the husband and wife who owned more than 95 percent of the capital stock of the company and who completely controlled its policies. The withdrawals which the Commissioner treated as dividends were not repaid to the corporation until after the tax controversy arose. After repayment the corporation again returned the money to the husband and wife who controlled the corporation, thus showing that the entire repayment was a simulated transaction. Besides, the issue involved income and excess profit taxes rather than a capital stock tax.

In the Anketell case and the case at bar the plaintiff sought by self-serving declarations to escape from the apparent face of the record with which such declarations did not tally. This is especially true in the instant case.

■ When the amounts in question were being received by plaintiff in 1932 and 1933, promissory notes were given to the Maine Company and the amounts were carried on the books of the Maine Company as notes receivable and on the books of the plaintiff as notes payable. To the outside world they appeared as assets in the hands of the Maine Company and as liabilities of the plaintiff. That condition continued until the dividend declaration of December 24, 1934. Plaintiff urges that these amounts were dividends in 1932 and 1933 because it had no intention of repaying them. Plaintiff's president, who was treasurer at the time the notes were issued and who signed them, testified that he considered the notes legal documents but "gave no thought or apprehension as to the necessity of ever having to repay them." But had circumstances developed in which it would have been to the advantage of the plaintiff to treat the notes as binding obligations, it is easy to see how such a contention could well have been advanced and what difficulties the Commissioner would have met had he sought to deal with them as if they were in no sense liabilities. To disregard a transaction carried out in such a manner, when to do so would be to the advantage of the parties who formally for their own other advantage created it, would put a premium on transactions of this kind.

What the Commissioner did was to treat the dividend declaration of December 24, 1934, by the Maine Company as a dividend and the liquidation of the demand notes by plaintiff as the receipt of a dividend by the latter company. Since that action conforms to what was done, we can see no reason for disregarding these formal acts of the parties.

It follows therefore that the petition should be dismissed.

It is so ordered.