NATIONAL CARBIDE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AIR REDUCTION SALES CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PURE CARBONIC, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5822, 5823, 5824. Promulgated March 25, 1947.

*John A. Wilson, Esq., Willard M. L. Robinson, Esq.*, and *Winfield A. Huppuch, II, Esq.*, for the petitioners.

*James C. Maddox, Esq.*, for the respondent.

600

## OPINION.

BLACK, *Judge*: The issue which we have to decide in this proceeding is whether, as the respondent has determined, the income from the operations of the three petitioners belonged not to Airco, the parent, but to the petitioners, and was taxable to them; or whether, as the three petitioners contend, the income from the operations of the petitioners in 1938, exclusive of the small amounts paid to petitioners under the contracts, belonged and was taxable to Airco, the parent company, both because the petitioners were in fact incorporated departments, divisions, or branches of Airco's business and because the petitioners operated pursuant to express contract with Airco.

Wilson Welder & Metals Co. was another subsidiary of Airco, which operated in the same manner as the petitioners, but it is not a party to these proceedings. Concededly, there was a loss from its operations in 1938 and the Commissioner has not determined any deficiency against it.

In our findings of fact we have endeavored to give a full and complete picture of the method of operations of petitioners as agents or branches or divisions of Airco. Therefore, in our discussion of the issue which we have to decide we shall endeavor not to unnecessarily repeat these facts.

It requires scant citation of authorities to establish the principle that normally corporations are separate juristic persons and are to be so treated for tax purposes. See *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415. Likewise, mere ownership by one corporation of all of the stock of a subsidiary does not of itself merge the two corporations or create the relationship of principal and agent between them. There are exceptions, however, particularly where the

subsidiary is so much a part of the parent in its operations that it amounts to no more than a mere department or agency.

It is the contention of petitioners that their manner of organization and their method of operation during the taxable year and for many years prior thereto bring them within the latter classification, and that their entire net income, outside of the nominal amounts retained by each of them under the terms of their respective contracts with the parent corporation, Airco, belonged to Airco and should have been returned for taxation by that corporation, and that it was so returned by the parent corporation and taxes were paid thereon. In support of their contention petitioners rely principally upon *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330; *Munson S. S. Line* v. *Commissioner*, 77 Fed. (2d) 849; and *North Jersey Title Ins. Co.* v. *Commissioner*, 84 Fed. (2d) 898.

Respondent, on his part, contends that the foregoing authorities are not applicable and that each of the petitioners is taxable on its own net income, regardless of any contract or agreement or method of operation which petitioners may have followed. Among the authorities cited by respondent to sustain his determination are *Burnet* v. *Commonwealth Improvement Co.*, *supra; Interstate Transit Lines* v. *Commissioner*, 319 U. S. 590; *Maine Central Transportation Co.*, 42 B. T. A. 350; and *Eskimo Pie Corporation*, 4 T. C. 669; affirmed per curiam, 153 Fed. (2d) 301.

We have carefully examined the authorities cited by petitioners and respondent and have studied them in the light of the facts present in the instant case, and we think that the facts which we have here bring petitioners within the ambit of the cases relied upon by them rather than those relied upon by respondent.

The Supreme Court, in *Southern Pacific Co.* v. *Lowe*, *supra*, held that the distributions which were in issue in that proceeding were not dividends, for the reason that the Central Pacific and Southern Pacific were in substance identical because of the complete ownership and control which the latter possessed over the former as stockholder and in other respects. The Court said in part:

\* \* \* While the two companies were separate legal entities, yet in fact, and for all practical purposes they were merged, the former being but a part of the latter, acting merely as its agent and subject in all things to its proper direction and control. \* \* \*

We think the foregoing words of the Supreme Court are aptly descriptive of the relationship which existed between petitioners and their parent, Airco, in the instant case. We summarize as follows some of the facts which have brought us to this conclusion: The capital stock of each petitioner is nominal in amount and is all owned by Airco. The members of the board of directors of each petitioner are elected

by Airco and, with one exception, they are all senior executive officers of Airco. The chairman of the board of directors of Airco was also chairman of the board of directors of each petitioner. The president of Airco was also a director of Airco and of each petitioner. The Airco board held regular meetings and exercised complete domination and control over the business of Airco and each of the petitioners. The board of directors of the petitioners held an organization meeting each year and thereafter only met when called upon by Airco to formalize action taken by the Airco board. The chairman, vice chairman, and president of Airco were in charge of the administration and management of the activities of each petitioner and carried out the policies and directives with respect to each petitioner as promulgated by the Airco board. One main office was maintained for Airco and the petitioners in the Lincoln Building, New York City, and, with two minor exceptions, the offices of all the executive officers of Airco and the petitioners were located there. All assets held by each petitioner were furnished to it by Airco, which paid for them with its own cash or stock. Airco supplied all the working capital of each petitioner. The business of the parent and the petitioners was conducted as one business unit, divided into six branches: corporate, operations, sales, financial, distribution, and research. Each of the six main branches was directed by a senior officer of Airco. The subdivisions of each of the six branches were also directed and managed by officers of Airco. All employees in each of the six branches performed their duties for Airco and each petitioner, whenever and wherever their services could be utilized in connection with the operations of any of the petitioners. All expenditures for Airco and each petitioner of more than $500 required specific approval of the Airco board of directors and its chairman. Advertising was conducted under one advertising manager, and through this medium Airco represented to its stockholders and the general public that the petitioners were divisions of the parent company. All purchases for each petitioner from persons outside the affiliated group, except emergency purchases up to $50, were made only upon orders issued by the general purchasing agent of Airco. Products produced by or materials purchased for one agency company were often transferred to another agency company. Where this was done the transfer was reflected on the intercompany accounts at cost, without the passage of any cash. There were no intercompany profits. All bank accounts maintained in the name of each petitioner were treated by Airco as its own and were drawn upon indiscriminately by it when money was needed by any company. There was substantial identity of officers authorized to sign checks on the bank accounts of Airco and on the bank accounts of each petitioner. All credits and collections were in charge of the Airco credit manager. Airco maintained pension sys-

tems for all.employees of all companies. Accounting was done for all companies by one general accounting office under the general auditor of Airco and accounting procedure was uniform. The proceeds realized from each petitioner's activities did not come to Airco as the result of any independent action by the agency company, such as declaration of dividends. A written operating agreement was entered into between Airco and each petitioner, under which the petitioner agreed to conduct a branch of the Airco business for a purely nominal fee. In each agreement the agency company agreed to credit, and did credit, monthly on its books to Airco all profits from its operations above the nominal amount of its compensation. The accounts between Airco and each petitioner were kept strictly in accordance with each operating agreement.

It is true, of course, that, taken separately, some of the foregoing facts would not be sufficient in themselves to make inoperative the general rule that corporations are separate juristic persons and are to be so treated for tax purposes. We think, however, that when all these facts are viewed together they bring petitioners within the rule announced by the Supreme Court in *Southern Pacific Co.* v. *Lowe, supra.*

The Circuit Court of Appeals of the Second Circuit held, in *Munson S. S. Line* v. *Commissioner, supra,* that the taxpayer, Munson Line, should be deemed the owner of each vessel held by and documented in the name of its wholly owned subsidiaries. In thus holding, the court, among other things, said:

\* \* \* The situation is similar to that involved in *Southern Pacific Co.* v. *Lowe,* 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142, where the court held that there was practical identity between the Central Pacific and the Southern Pacific because of the complete ownership and control which the latter corporation possessed over the former. Thus even in tax cases the separate identity of corporations may be disregarded in exceptional circumstances. See, also, *Gulf Oil Corp.* v. *Lewellyn,* 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 133; *New Colonial Ice Co.* v. *Helvering,* 292 U. S. 435, 442, 54 S. Ct. 788, 78 L. Ed. 1348. \* \* \*

Respondent, in support of his determination, relies heavily upon *Interstate Transit Lines* v. *Commissioner, supra,* which affirmed 130 Fed. (2d) 136, which in turn affirmed our decision in 44 B. T. A. 957. We think that case is clearly distinguishable from the instant case on its facts. In the *Interstate Transit Lines* case the taxpayer (a Nebraska corporation) operated an interstate bus line between Illinois and California, and Missouri and Wyoming. Under California law as it existed prior to 1937, the petitioner, being a foreign corporation, was prohibited from doing an intrastate business in California. In order to handle such local business on its buses, the taxpayer organized a California bus corporation, named Union Pacific Stages of California, and made an agreement with that corporation under which the Cali-

fornia corporation was to take over the operation of Interstate's buses at the state line and operate them in California for its benefit and under its direction, the profits to be paid to Interstate and any deficit to be borne by it. In the year 1936 the California corporation had an operating deficit of $28,100.66 and Interstate paid that amount to the California subsidiary and deducted it as a business expense in its own return. The Supreme Court, sustaining the decisions of the lower courts, held the deduction improper. The decision of the majority of the Court was placed squarely upon the ground that the subsidiary was engaged in a business which the parent corporation.could not lawfully do; hence, that the parent corporation could not claim the deduction as an ordinary and necessary expense of its business. The majority opinion pointed out that "an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer." The Court then said:

This is not the case of a mere branch or division of a business conducted solely for convenience's sake under a separate corporate form. Petitioner did an interstate bus business and was a corporation foreign to California. On the other hand the business of Stages in the tax year in question was both interstate and intrastate. For petitioner to engage in intrastate business in California was, on the findings, illegal. * * *

The Court also pointed out that, even if it could be claimed that the intrastate business done by the subsidiary was legitimate business of the parent corporation, the record failed to show what part of the deficit, if any, resulted from that business as distinguished from the local business, so that no part of the deduction could be allowed.

We have no such facts in the instant case as existed in *Interstate Transit Lines, supra*. The Commissioner makes no contention that Airco and its subsidiaries operated in the manner shown in our findings of fact because it was illegal for Airco to do such business on its own account. On the contrary, the evidence affirmatively shows that such was not the reason for the manner of operation by Airco and its subsidiaries. The reasons which did prompt such method of operation are fully set out in our findings of fact and need not be repeated here. Moreover, the issue in the instant case is altogether different from the issue in the *Interstate* case. In the *Interstate* case the issue was one of deduction for ordinary and necessary business expense. We have no such issue here. The issue is squarely whether the income of the subsidiaries is taxable to them because it was their income, or whether, because they were operated as branches or divisions of Airco and each under a contract which clearly disclosed the relationship, the net income of these subsidiaries was taxable to Airco.

Petitioners make no contention that if they lose on this issue they are in the alternative entitled to deduct as business expenses the

amounts of income which they turned over to Airco. They concede this if the issue which is raised by the pleadings is decided against them, then the deficiencies are those which have been determined by respondent. On the other hand, respondent concedes that, if the issue raised by the pleadings is decided in favor of the petitioners, then there are no deficiencies.

As we have already stated, we think the law and the facts are on the side of petitioners, and, therefore, we decide in their favor.

*Los Angeles & Salt Lake Railroad Co.*, 4 T. C. 634, was not cited or relied upon·by the Commissioner in his brief. However, we think it is appropriate to point out that one of the issues in that case was similar to that involved in *Interstate Transit Lines, supra,* and we decided it in the same way as we had decided in the *Interstate* case. As one of the authorities for such decision, we cited the *Interstate* case. If the distinction which we have made above between the *Interstate Transit Lines* case and the instant case is sound, as we think it is, then undoubtedly the same distinction applies to *Los Angeles & Salt Lake Railroad Co., supra.*

It may be argued, although not stressed in respondent's brief, that consolidated returns by affiliated corporations were denied generally by the Revenue Act of 1934, and, therefore, on that account, if no other, petitioners should not prevail in this proceeding. We are not unmindful of this change in the law effected by the 1934 Act and we have no purpose to impinge upon it. However, we do not believe that this change in the law affected that narrow class of corporations which are conducting their operations in the manner such as described by the Supreme Court in *Southern Pac. Co.* v. *Lowe, supra.* The respondent himself evidently so construed the law so far as petitioners were concerned, because it was not until the taxable year 1938 that he refused to recognize Airco's right to return the income of petitioners as its own.

So far as the record shows, the income tax returns of Airco and petitioners for the years 1935, 1936, and 1937 were not disturbed, although they were filed on the same basis as in the taxable year and they were all years subsequent to 1934, when Congress amended the law so as to deny the privilege of filing consolidated returns to affiliated corporations generally. Of course, respondent is not in any way estopped to do what he has done in the instant case by any action of his in the years 1935, 1936, and 1937. Nevertheless, we think that his apparent interpretation of the law in 1935, 1936, and 1937 as it affected petitioners was correct and that the rule announced by the Supreme Court in *Southern Pac. Co.* v. *Lowe, supra,* still stands.

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

VAN FOSSAN, ARNOLD, and OPPER, *JJ.*, dissent.