Estate of L. E. Faris, Deceased, Mari Jane Faris, Executrix v. Commissioner.
Estate of Faris v. Commissioner
Docket No. 51073.
United States Tax Court
T.C. Memo 1955-268; 1955 Tax Ct. Memo LEXIS 71; 14 T.C.M. (CCH) 1061; T.C.M. (RIA) 55268; September 29, 1955
*71 Held: Petitioner is entitled to deduct a loss under Section 23(e), I.R.C. of 1939, for expenditures made in a mining venture rather than a capital loss for the worthlessness of stock, where a corporation formed by petitioner for the purpose of raising additional capital for the venture never took title to the properties, never issued any stock, never engaged in any business activity and was dissolved within a short time after its formation, and where petitioner operated the venture as a sole proprietor. G. Lee Burns, Esq., and George E. Gibson, Esq., for the petitioner. Hunter D. Heggie, Esq., and Urban C. Bergbauer, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $431.92 in income tax for the year 1947. The petitioner claims an overpayment in the amount of $1,491.89, the entire amount of the tax paid for that year. The only issue for decision is whether a loss of $76,121.11 sustained in 1947 was an ordinary business loss deductible in full under section 23(e) of the Internal Revenue Code of 1939 or a capital loss under section 23(g) subject to the limitations of section 117(d)(2) of the Internal Revenue Code of 1939. Findings of Fact Some of the facts have been stipulated, are so found and the stipulation is included herein by reference. Dr. L. E. Faris (hereafter referred to as *73 the taxpayer) died October 24, 1952. Mari Jane Faris, his widow, is the duly appointed, qualified and acting executrix of his estate. His individual income tax return for 1947 was filed with the collector of internal revenue at Kansas City, Missouri. In 1943 the taxpayer was engaged in the cemetery business in Kansas City, Missouri. During the latter part of 1943 he became interested in the development of a mining property located in Marion County, Arkansas, known to contain zinc deposits and possibly lead, sulphur and other minerals. Lewis Flader held an agreement with Philip C. Gault the fee owner of the property together with a mining lease thereon. The taxpayer, Flader and two others formed a partnership in 1943 in which the taxpayer held an 80 per cent interest with a view to developing and operating the mine. This partnership operated under the name "Strategic Minerals Production Company." Partnership returns were timely filed for the periods June 17, 1944 to May 31, 1945, June 1, 1945 to May 31, 1946 and June 1, 1946 to September 7, 1946. Each return bore a statement to the effect that no income had been received by the partnership and that expenditures were made entirely *74 for plant construction, development and extraction of ore. The partnership was terminated on September 7, 1946 and thereafter the mining activities were carried on by the taxpayer as a sole proprietorship under the same name as the partnership. A substantial part of the taxpayer's time was devoted to this work. A mill was erected on the property and a road and tunnels were built. From 1943 through part of 1947 the taxpayer expended a total of $79,947.60 of his own funds for various purposes in connection with the development of the mine. No deductions were claimed by the taxpayer for these expenditures in his income tax returns for the years 1943, 1944, 1945, or 1946. On August 2, 1946, Flader assigned to the Strategic Mineral Production Company his agreement with Gault for a warranty deed to the mining property and the taxpayer personally made two $250 payments to Gault thereunder, the last payment being made in September 1946. During the early years of this mining development the Government was paying a subsidy for zinc. Subsidy payments were terminated in 1946. More capital was needed for the mine and the taxpayer decided to form a corporation with a view toward raising *75 money through the sale of stock. An attorney at Mountain Home, Arkansas, was employed for this purpose. He prepared articles of incorporation in which the taxpayer and two nominal parties, Charles C. Beamer and P. M. Turney were named incorporators. The attorney filed the articles with the Secretary of State of Arkansas on December 2, 1946. Strategic Mineral Production Company (hereafter called the corporation) was thus formed with authority to issue 2,500 shares of stock at $100 per share. At the taxpayer's direction the attorney prepared an application to the State Bank Department of Arkansas for authority to sell $50,000 of the corporation's stock. There were also prepared and executed a deed to the mining property from the taxpayer and his wife to the corporation and a bill of sale for certain mining equipment from the taxpayer to the corporation. The latter two documents were turned over to the attorney by the taxpayer with instructions to deliver them to the secretary of the corporation if any stock was sold. The application for authority to sell stock was executed by the taxpayer and the other two incorporators and filed with the proper state official. The application showed *76 the properties described in the deed and bill of sale as assets of the corporation. On January 15, 1947, the State Bank Commissioner of Arkansas issued a certificate of authority to sell stock in the corporation. Nothing further was done toward formally organizing the corporation. No seal, minute book or stock certificates were ever obtained. No formal meetings of incorporators or stockholders were held. No bank account or books of account were ever opened. No stock was ever sold or issued. No activities were carried on by the corporation except as hereafter detailed. On October 18, 1947, an agreement and consent that the corporation be dissolved was filed with the Secretary of State of Arkansas. Under date of November 23, 1950, the deed and bill of sale neither of which had ever been recorded or delivered to the corporate secretary were returned by the attorney to the taxpayer who forwarded them to his accountant with whom they remained until the hearing of this proceeding. In the early part of 1947 a complaint at law was filed against the taxpayer in the Circuit Court of Marion County, Arkansas, by B. H. Cowart who had been an employee of the taxpayer at the mine. The complaint *77 alleged that on October 9, 1946, Cowart had been injured in the course of his employment, that his injuries were wholly due to the negligence of the taxpayer, that he had sustained damages in the total amount of $14,500, and prayed for judgment against the taxpayer for that amount. In connection with this suit Cowart attached all of the milling equipment at the mine. The taxpayer asked his Arkansas attorney to represent his interests in defending this suit. As a defensive measure and in order to help in effecting a settlement of the suit, the attorney filed an interpleader in the name of the corporation alleging that the property that had been attached by Cowart was the property of the corporation. A settlement was reached, the terms of which were embodied in a contract entered into on August 11, 1947, by Cowart, as party of the first part, and by the taxpayer, individually, and the corporation, by the taxpayer as its president, as parties of the second part. The corporation was made a party to the contract merely because of the interpleader. The contract which was prepared by the attorney, recited that in consideration for a full release from the first party, the second parties had *78 assigned to the first party a two-thirds undivided interest in certain mining mill equipment listed therein; that the equipment was to be sold and, after payment of costs, the proceeds were to be divided one-third to the corporation and two-thirds to Cowart with the proviso that the latter should not receive more than $10,000. The suit against the taxpayer was dismissed. The proceeds from the sale of the property covered by the contract totalled $2,057.50 and, after deducting expenses of $629.66, $1,101.35 was paid to Cowart and $326.49 was paid to the taxpayer. No part of the proceeds was paid to the corporation. In the fall of 1947 the taxpayer advised Gault that he could not continue with their agreement respecting the purchase of the mine property. By deed dated October 20, 1947 and delivered on or about the same date the taxpayer and his wife quitclaimed to Gault all of their right, title and interest in and to the mine property. At the same time a quitclaim deed to Gault covering the property was executed in the name of the corporation. Gault had asked for the latter deed, at the suggestion of an Arkansas attorney who had examined the abstract, because of a reference in the *79 abstract to an assignment by Flader on April 5, 1946 of an interest in the "Strategic Mineral Production Company." Gault did not know that "Strategic Mineral Production Company" referred to the partnership which existed at that time between Flader and the taxpayer. The taxpayer had told Gault that he intended to incorporate and, not knowing whether there was a corporation in existence or not, Gault asked for the deed out of an abundance of caution. Privilege to remove the mill and equipment from the property was granted in both deeds and the mill and equipment were subsequently disposed of for salvage value. During the year 1947 the taxpayer discontinued the mining business. A Form 1120, United States Corporation Income Tax Return, marked "Final Return" was filed on December 19, 1947 in the name of the corporation for the period beginning December 2, 1946 and ending October 18, 1947. No items of income or deduction were shown, and the following statement appeared on the face of the form: "A CHARTER WAS OBTAINED FOR THIS CORPORATION WITH THE INTENTION OF HAVING THE CORPORATION TAKE OVER MINING PROPERTIES IN ARKANSAS. THE TRANSACTION WAS NEVER COMPLETED AND THE STOCK OF THE CORPORATION *80 WAS NEVER ISSUED. THE CORPORATION WAS DISSOLVED ON OCTOBER 18, 1947." In his individual tax return filed by the taxpayer for the year 1947 a loss in the amount of $76,947.60 was reported on Schedule D as a long-term capital loss with the explanation: "Loss on stock in Strategic Mineral Production Company. Became worthless during the year." This return was prepared by the taxpayer's accountant. Because of lack of time, the accountant did not investigate the matter thoroughly when he prepared the return. He intended to do so at a later date before the period of limitations for filing claim for refund expired and to adjust the return if he determined that the loss had been erroneously reported. On January 15, 1951, the taxpayer filed a claim for refund of the entire amount of tax paid for the year 1947 on the ground that the aforesaid loss was sustained as a result of the abandonment by the taxpayer in that year of the mining operation and properties, that it constituted an ordinary loss deductible in full, and that the return was erroneous "in deducting the loss on the mining business as a loss on investment in corporate stock." The claim for refund was prepared by the taxpayer's *81 accountant. In his notice of deficiency respondent denied the taxpayer's claim and determined that the loss was sustained on account of the worthlessness of the stock of the Strategic Mineral Production Company and was a capital loss subject to the limitations of section 117 of the Internal Revenue Code. Upon the discontinuance of his mining business and the surrender and abandonment of the properties used therein in the taxable year 1947, the taxpayer sustained a loss of $76,121.11 incurred in that business which was not compensated for by insurance or otherwise. Opinion TIETJENS, Judge: As disclosed by our findings of fact the taxpayer first reported and claimed the loss here in issue as a loss on account of the worthlessness of stock of the Strategic Mineral Production Company. He now claims the loss as a loss under section 23(e) of the Internal Revenue Code of 1939 not subject to the capital loss limitations. The fact of the loss and its amount is not here in question and the issue, as posed in the Commissioner's brief "is whether the petitioner will be allowed to disregard the corporate entity of his wholly-owned corporation." In other words, *82 we gather the Commissioner's position to be that after the formation of the corporation, the mining business which had theretofore been carried on by the partnership and later by the taxpayer as a sole proprietorship became the business of the corporation, and that whatever loss was suffered by the taxpayer resulted from the worthlessness of his stock in the corporation rather than a loss stemming from his own business. No question is raised by the Commissioner that the expenditures made by the taxpayer were business expenses and deductible only in the year made and we do not ourselves treat of that possibility. To sustain his contentions, the Commissioner relies on cases such as New Colonial Co. v. Helvering, 292 U.S. 435; Burnet v. Commonwealth Improvement Co., 287 U.S. 415; and Moline Properties v. Commissioner, 319 U.S. 436, which, in general, stand for the principle that a corporation must be regarded as a separate taxable entity and that the corporate form must be respected for tax purposes separate from the corporate stockholders. But the cases just cited cut both ways. They recognize that there may be circumstances where the general *83 principle is not applicable. We think the facts of the instant case call for a different result than would be reached if the general rule were applicable. Here, as was the case with one of the corporations involved in Paymer v. Commissioner, 150 Fed. (2d) 334, which was concerned with a similar problem, and where the corporation was held not to be a taxable entity, the corporation engaged in practically no business activity. No property was ever turned over to it by the taxpayer. The conveyance of the mine to the corporation and the sale to it of the mining equipment were never consummated by delivery of the deed and bill of sale and there was no intention that it actually take over the business or the properties unless stock was sold and new capital was raised. This never eventuated and the corporation was speedily dissolved. In the meantime, as we have found the facts, the taxpayer himself was developing the mine and the loss that resulted was his personal loss from the abandonment of the mine and not a loss resulting from worthlessness of corporate stock. As a matter of fact, no stock in the corporation was ever issued to him and he never owned any. We do not think *84 that the representation made in the application to sell stock filed with the State Bank Department that the corporation had assets which had never been transferred to it, could in and of itself effect transfers which had not taken place. While we hesitate to characterize the corporation here as a "sham" as was done by the court in Paymer v. Commissioner, supra, nevertheless we conclude that it never held any property and never engaged in business to the extent that it should be recognized as a taxable entity for the purpose of ascribing to it rather than to the taxpayer the loss here in issue. This is a stronger case for the taxpayer than Paymer, for there the corporation at least held title to property conveyed to it. The Commissioner argues that the corporation's participation in the Cowart litigation amounted to engaging in business and suggests that one of the purposes of organizing the corporation was to protect the taxpayer from personal liability. But the facts do not support this suggestion and we have found nothing in the evidence to connect the formation of the corporation by the taxpayer with the possibility of protecting him from litigation by one of his *85 employees. The filing of an interpleader by the corporation was undertaken by the attorney charged with defense of the taxpayer as a move calculated to expedite settlement. It was characterized in his testimony as a "sham" and, while not condoning the move, we do not think it affects the result here. Another factor relied on by the Commissioner as calling for a different result from that which we reach here, is the fact that the corporation quitclaimed the mining property to Gault when the mining business was terminated. The reasons for this are adequately explained in the findings of fact. It was not necessarily an admission by the taxpayer that the corporation owned the property. We conclude that the taxpayer is entitled to the claimed loss under section 23(e) of the Internal Revenue Code of 1939. Because of other concessions, Decision will be entered under Rule 50.