HOWARD A. JACKSON AND ELIZABETH D. JACKSON, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47234.   Filed April 6, 1955.

*David W. Richmond, Esq.*, and *Numa L. Smith, Jr., Esq.*, for the petitioners.

*Ellyne E. Strickland, Esq.*, for the respondent.

4

8

## OPINION.

WITHEY, *Judge:* The petitioners take the position that they did not realize any gain in 1949 by reason of any of the transactions occurring between April 10 and April 30 of that year and culminating with the surrender to Empire on April 29 of the 66,666⅔ shares of stock in Empire, initially issued to them, in exchange for all the capital stock of Delaware. In support of their position they contend (1) that the transfer to Dumelle, on April 22, of their stock in Empire in exchange for the capital stock of Dumelle was in good faith for a proper purpose and that no gain or loss was recognizable on the exchange, (2) that the sale on April 25 of the Empire stock by Dumelle to Belgrade was made in good faith for a full and adequate consideration and was properly reported by Dumelle as an installment sale, and (3) that on April 29 Belgrade, not the petitioners, exchanged the Empire stock for the stock of Delaware and that Belgrade properly reported the transaction in its income tax return for 1949. The respondent contends that on the factual situation presented the corporate entities of Dumelle, Belgrade, and Delaware should be disregarded and that the several steps or transactions involved herein should be considered

as a single transaction for tax purposes, namely, as an exchange between petitioners and Empire by which Empire purchased one-third of its capital stock from petitioners in consideration of one-third of its net assets. In the alternative, he contends that if it be found that the corporate entities of Dumelle and Belgrade are to be disregarded but the corporate entity of Delaware is to be recognized, then the petitioners realized a long-term capital gain of $469,333.34 upon the exchange of their one-third of the capital stock of Empire for all the capital stock of Delaware. We will consider first the question of the recognition to be accorded Dumelle, Belgrade, and Delaware.

With respect to the recognition or nonrecognition of corporate entities, the Supreme Court in *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436, said:

The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. *New Colonial Co.* v. *Helvering*, 292 U. S. 435, 442, 54 S. Ct. 788, 791, 78 L. Ed. 1348; *Deputy* v. *Du Pont*, 308 U. S. 488, 494, 60 S. Ct. 363, 366, 84 L. Ed. 416. * * *

To this rule there are recognized exceptions. *Southern Pacific Co.* v. *Lowe*, 247 U. S 330, 38 S. Ct. 540; 62 L. Ed. 1142, and *Gulf Oil Corp.* v. *Lewellyn*, 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 133, have been recognized as such exceptions but held to lay down no rule for tax purposes. *New Colonial Co.* v. *Helvering, supra*, 292 U. S. 442, 54 S. Ct. 791, 78 L. Ed. 1348, note 5; *Burnet* v. *Commonwealth Imp. Co., supra*, 287 U. S. 419, 420, 53 S. Ct. 199, 77 L. Ed 399. * * * In general, in matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal. In such situations the form is a bald and mischievous fiction. *Higgins* v. *Smith*, 308 U. S. 473, 477, 478, 60 S. Ct. 355, 357, 358, 84 L. Ed. 406; *Gregory* v. *Helvering*, 293 U. S. 465, 55 S. Ct. 266, 79 L. Ed. 596, 97 A. L. R. 1355.

In considering the decision of the Supreme Court in the *Moline Properties* case, the Court of Appeals for the Second Circuit in *National Investors Corporation* v. *Hoey*, 144 F. 2d 466, said:

In that case the question was whether the corporation might insist upon the Treasury's including capital gains within the gross income of its sole shareholder, and the court decided that it might not. That was the same situation as existed in *Burnet* v. *Commonwealth Improvement Co., supra*, 287 U. S. 415, 53 S. Ct. 198, 77 L. Ed. 399. The gloss then put upon *Higgins* v. *Smith, supra*, was deliberate and is authoritative: it was that, whatever the purpose of organizing the corporation, "so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." 319 U. S. 439, 63 S. Ct. 1134, 87 L. Ed. 1499. That, as we understand it, is the same interpretation which was placed upon corporate reorganizations in *Gregory* v. *Helvering*, 293 U. S. 465, 55 S. Ct. 266, 79 L. Ed. 596, 97 A. L. R. 1355, and which has sometimes

been understood to contradict the doctrine that the motive to avoid taxation is never, as such, relevant. In fact it does not trench upon that doctrine; it merely declares that to be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term "corporation" will be interpreted to mean a corporation which does some "business" in the ordinary meaning; and that escaping taxation is not "business" in the ordinary meaning.

In view of what was said in the *Moline Properties* case and the *National Investors* case, it is clear that escaping taxation is not "business" in the ordinary meaning, and that for a corporation to be recognized as a separate entity for purposes of taxation it must be organized to, or must, engage in some industrial, commercial, or other activity besides avoiding taxation. Considering the facts here in the light of the foregoing, we find that neither Dumelle nor Belgrade has ever carried on any business at any time. The record discloses no transactions of significance since organization except those involved herein by which the stock of petitioners in Empire was routed back to Empire. While certain of Jackson's testimony is to the effect that since April 1949 he has been negotiating for the acquisition by Belgrade of a company in Arkansas, other of his testimony is that he has been desirous for many years of getting it for Mrs. Jackson or for Belgrade. At any rate, up to the time of the hearing the company had not been acquired by him, or by Mrs. Jackson, or by Belgrade.

Following the advice of Dikeman, Jackson's attorney, petitioners organized Dumelle, transferred their Empire stock to it, and then had Dumelle transfer the stock to Belgrade by way of an ostensible sale. With Belgrade not shown to have had assets of as much as $1,000 and the terms of the sale being $470,000, payable $1,000 cash and $469,000 in a series of installment notes, we think it is clear that petitioners would never have authorized such a sale in an arm's-length transaction to a purchaser similarly situated. In *Wilhelmina Dauth*, 42 B. T. A. 1181, 1189, it was said:

The test to determine whether a transaction is a bona fide transaction is described by the term "arm's length," or, in other words, was the transaction carried out in the way that the ordinary parties to a business transaction would deal with each other?

Applying the "arm's length" test here, we think the arrangement employed by petitioners to get the Empire stock from themselves to Belgrade was lacking in bona fides.

Furthermore, petitioners, for reasons best known to themselves but not disclosed here, refrained from disclosing the existence of Dumelle or Belgrade to Harris and Cohn, who in a settlement of existing differences dealt exclusively with petitioners as owners of the Empire stock which was exchanged for the stock in Delaware.

In view of what has been said above, we think the corporate identities of Dumelle and Belgrade and the transactions by them involving Empire stock are to be disregarded here.

The situation with respect to Delaware is different. The evidence relative to it shows that it was formed pursuant to discussions by Harris and Jackson respecting the formation of a corporation to acquire, for its stock, a portion of the assets of Empire and which corporation was to be managed solely by Jackson without participation therein by Harris and Cohn. The evidence also shows that Delaware acquired certain properties of Empire including an engine and pump business which it has continued to operate. The evidence further shows that after the organization of Delaware and its acquisition of the above-mentioned assets certain matters of friction between Jackson and Cohn remained unsettled and that it was after the settlement of those matters and by reason of that settlement that there was a surrender by petitioners of their Empire stock to Empire in exchange for the stock of Delaware. Under the circumstances, the corporate entity of Delaware must be recognized.

The record contains no evidence directed to the fair market value of the Delaware stock at the time it was exchanged by Empire for its own stock. However, the record shows that the fair market value of the net assets of Delaware was $470,000 and that its average net income since organization has been about $30,000 a year. In this situation, and in the absence of evidence indicating otherwise, we have found as a fact that the fair market value of the Delaware stock on the date of the exchange was $470,000. Since the basis to the petitioners of the Empire stock exchanged for the Delaware stock was $666.66, the difference between that amount and the fair market value of the Delaware stock, $470,000, or $469,333.34, constituted long-term capital gain to the petitioners.

The remaining issues involve the question of whether Jackson was in receipt of taxable income in 1949 with respect to the installment notes issued to him by Empire in connection with its purchase from him of Tagliabu stock in 1946 and Flextite stock in 1947. The respondent's determination that Jackson received payment of the notes in 1949 and was in receipt of income as a result thereof was based on the conclusion that the corporate entity of Delaware was to be disregarded and that Jackson received assets from Empire of a fair market value equal to the amount of the notes. The evidence shows that Delaware assumed liability for the payment of the notes in connection with the exchange of its capital stock for certain assets of Empire and that nothing was paid by Delaware on the notes until 1953. In this situation, and since the corporate entity of Delaware is to be recognized and since the exchange between petitioners and Empire in 1949 was the exchange of Empire stock for Delaware stock,

it is apparent that Jackson received no payment on the notes in 1949. Consequently, he was not in receipt of income arising from payment of the notes as determined by respondent. Respondent's action with respect to these issues is not sustained.

*Decision will be entered under Rule 50.*